**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Frederick L. TOEPLEMAN and Garland**
**Greenway, Defendants.**

**Civ. No. 822.**

United States District Court
E. D. North Carolina,
Raleigh Division.

June 8, 1956.

Julian T. Gaskill, U. S. Atty., Lawrence Harris, Jane A. Parker, Asst. U. S. Attys., Raleigh, N. C., for plaintiff.

Royster & Royster, Frank Hancock, Jr., Oxford, N. C., for defendant Frederick L. Toepleman.

Banzet & Banzet, Warrenton, N. C., for defendant Garland Greenway.

GILLIAM, District Judge.

This action was instituted against several defendants, but prior to the hearing a dismissal was entered with respect to all defendants other than Frederick L. Toepleman and Garland Greenway.

The claim of the Government is made under the False Claims Act, Title 31 U.S. C.A. §§ 231–233. Section 231 reads, so far as pertinent here: "Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person * * * any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher * * * claim * * * knowing the same to contain any fraudulent or fictitious statement * * * or who enters into any agreement * * * or conspiracy to defraud the Government of the United States, or any department or officer thereof, by obtaining or aiding to obtain the payment or allowance of any false or fraudulent claim * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained * * *, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit." Jurisdiction is given by Section 232.

Defendants advance certain arguments, any one of which, if decided adversely to the Government, would make it unnecessary to consider the case on its factual merits. These arguments will now be considered.

It is contended that the action is barred by Section 2462, Title 28, which reads: "Except as otherwise provided by Act of Congress, an action * * * for the enforcement of any civil fine, penalty, or forfeiture * * * shall not be entertained unless commenced within five years from the date when the claim first accrued * * *." The commission of the acts upon which the claim is based occurred more than five years before the commencement of the action, and, therefore, the claim is barred if the quoted statute applies. I am of the opinion, however, that it does not, but rather that Section 235, Title 31, applies. This statute is found in the chapter dealing with debts due by or to the United States, of which the False Claims Act is a part, and reads: "Every such suit shall be commenced within six years from the commission of the act, and not afterward." This provision, therefore, applies specifically to actions for forfeitures and damages based on false claims, such as this. The acts complained of were committed within the six-year period just before the action was commenced and there is no statutory bar. In United States v. Borin, 5 Cir., 209 F.2d 145, the six-year statute was held applicable, though it does not appear that the applicability of the five-year statute was advanced as an apparent argument.

Another argument of defendants is that even if false claims were filed by defendants they were not filed "upon or against the Government of the United States, or any department or officer thereof" within the words or spirit of the statute, since the Commodity Credit Corporation, against whom the evidence shows the claims were filed, is not a "department" or "officer" of the United States, and that the action is improperly brought in the name of the Government as plaintiff.

The Commodity Credit Corporation, as it now exists, was created by Congress by act which became effective June 29, 1948, and in the first paragraph, Section 714, Title 15, we find that Congress declared: "[The Corporation] * * * shall be an agency and instrumentality of the United States, within the Department of Agriculture * * *." The United States owns all the capital stock and the money used to pay the fraudulent claims alleged to have been filed was that of the United States. It appears plain that the Commodity Credit Corporation is a department of the United States, if not the United States itself, within the meaning of the statute. This statute has been construed broadly "to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." United States, ex rel. Marcus v. Hess, 317 U.S. 537, 544, 63 S.Ct. 379, 384, 87 L.Ed. 443. The purpose of the statute was to prohibit the drawing of any money from the Treasury of the United States upon any false claim.

With respect to the position of defendants to the effect that the action was instituted improperly in the name of the United States, it is sufficient only to refer to the statutes. Section 231 provides that the guilty party "shall forfeit and pay to the United States" and Section 232 clearly contemplates that the action may be brought either by the United States or, under some circumstances, by an informer in the name of the United States. The action is properly brought in the name of the United States.

Let us now come to a consideration of the case on its merits.

At all times involved, Frederick L. Toepleman and Garland Greenway, the defendants, were residents of Vance County, North Carolina.

During the period from July, 1948, through June, 1949, defendants were partners under the name "Garland Greenway", with offices in Henderson and Louisburg.

At no time was either defendant in the military or naval forces of the United States or in the militia called into or ac-

tually employed in the service of the United States.

The Commodity Credit Corporation was and is an agency and instrumentality of the United States within the Department of Agriculture whose officials and employees were and are persons in the Civil Service of the United States.

During the cotton marketing year from July 1, 1948, through June 30, 1949, the Commodity Credit Corporation conducted the Cotton Loan Program as authorized by its charter, the statutes, and regulations published at 13 F.R. 4338. Under this program non-recourse loans were provided for an eligible producer, who had to be a person who produced cotton in 1948, on eligible cotton, which had to be produced by the person tendering it for a loan.

To obtain a loan under the program an eligible producer had to tender a duly executed 1948 Cotton Producer's Note and Loan Agreement to Commodity Credit Corporation, either directly or indirectly through one of its approved lending agencies, listing the warehouse receipt numbers and description of eligible cotton as security for the non-recourse loan.

Commodity entered into separate Lending Agency Agreements with the First National Bank, Henderson, N. C., and First Citizens Bank & Trust Co., Louisburg, N. C., covering loans under the 1948 program. Each agreement authorized the agency bank to make loans to producers in accordance with the provisions of the 1948 Loan Instructions. Commodity agreed to reimburse the agency bank for all loans advanced in accordance with the loan instructions.

The defendants obtained eighty-two 1948 Producer's Notes which were unexecuted except for signatures in blank by R. B. Baird, Ashton Davis, Gilie Supton, E. B. Jones, John Lambert, S. A. Moseley, W. B. Moseley, J. T. Parrish, W. T. Paschall, F. G. Poythress, Robert Wilkins, Herman Winn, Shelton Wright and T. J. Wright.

The partnership of Toepleman and Greenway purchased from various sources 325 bales of 1948 cotton, using partnership funds.

The defendant Toepleman listed or caused to be listed on the eighty-two notes signed in blank the warehouse receipt numbers and description of the 325 bales of cotton purchased from various sources by the partnership. The partnership held full title to and owned the 325 bales at the time they were listed on the 82 notes and at the time the notes and warehouse receipts were tendered to the tending agencies.

The partnership, through Toepleman, tendered 57 of the notes to the First National Bank and 25 of them to First Citizens Bank and Trust Company, to obtain loans under the 1948 program and requested a disbursement of the loan proceeds. Each bank disbursed to the partnership the loan proceeds of the notes tendered to it, and made no disbursement to the producers listed on the notes. The full proceeds of the 82 notes were received by the partnership. The banks then transmitted the 82 notes to Commodity and received from it reimbursement for the loan proceeds paid to the partnership. The First National Bank transmitted 57 of the notes by ten letters of transmittal, and the First Citizens Bank and Trust Company 25 notes by four letters of transmittal.

Thirty-Nine of the notes were paid by the partnership in March, 1949, and the cotton security redeemed, so that Commodity suffered no loss on these loans. Forty-three of the notes were not paid at maturity and the unredeemed cotton securing these loans was sold on January 11, 1955, for $6,733.97 less than the face of such notes, resulting in a loss to plaintiff in that amount.

The activities above set forth were accomplished by the partnership, but all transactions were handled by Toepleman and Greenway had no actual knowledge of the pledge of any bale of ineligible cotton. Toepleman, of course, had actual knowledge that every bale pledged on the eighty-two notes was ineligible because not produced by the borrower.

 Having determined that the defendant Greenway is not liable to plaintiff in any event, I will dispose of the case as to him first, leaving certain questions pertinent to the case against Toepleman for later discussion. As a basis of liability it must appear that a false claim was filed "knowing such claim to be false." I have found, and I think even the evidence for plaintiff shows, that the defendant Greenway had no personal knowledge of any false claim against the plaintiff. It is suggested that the Court should find that the two defendants entered into a conspiracy to file the false claims, but I find on the evidence that no such conspiracy existed. It may be logically argued that Greenway was careless in his attitude toward the partnership affairs and that closer attention would have prevented the filing of the false claims. I find this as a fact, but I deem such finding far short of a finding that there was a conspiracy between the partners. It is argued also that even if Greenway was actually ignorant of the fact that Toepleman was filing false claims, he is liable because of his relation as partner to Toepleman, citing North Carolina G.S. § 59–43, which is in these words: "Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his copartners, loss or injury is caused to any person, not being a partner * * * or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." It is my opinion that this statute does not sustain plaintiff's position. It should be noted that the North Carolina statute says "the partnership is liable", not each partner. This is not an action against the partnership. Partnership assets might possibly be applied to the payment of the forfeitures and damages, but this action is against Greenway as an individual, not as a partner. It is urged that the statute applies because it uses the word "penalty", but actually this is not an action for penal-

ties. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. No helpful decision on this point has been cited or found, but Greenway's counsel note the decisions construing section 32, subsection c(1), Title 11, denying discharge to a bankrupt who has committed the offense "of having knowingly and fraudulently * * * (made) a false oath * * * in relation to any bankruptcy proceeding * * *" The majority rule seems to be that a false statement made by one partner, unknown to an innocent partner, will not support denial of discharge to such innocent partner. In re Josephson, D.C., 229 F. 272.

 I find that the defendant Greenway is not liable to plaintiff as under the evidence it does not appear that he made a false claim knowing it to be "false, fictitious or fraudulent", and that he is not liable to plaintiff by reason of the partnership relationship with defendant Toepleman, who, of course, knew that the cotton pledged in the notes was ineligible for loans under the act.

 Although the defendant Toepleman does not deny either that each of the eighty-two notes pledged ineligible cotton, that is, cotton not produced by the borrower, or that such fact was known to him, his counsel advance several arguments against liability under the statute. One of such arguments is that the presentation of a note to a lending agency bank representing Commodity which is false in that ineligible cotton is pledged, does not constitute the filing of a false claim within the meaning of the statute. I am referred to United States v. McNinch, D.C., 138 F.Supp. 711, 713, and the following language of the Court: "It seems evident that, if the statute is made to apply here, it will be after the Court has effected some very drastic amendments to the Act * * *, such as holding that a credit application directed to a bank is the same as a 'claim upon or against the Government of the United States, or any department or officer thereof,' the bank, of course, being regarded as the Government or a department thereof." With all respect,

I disagree. Commodity, under the act, was obligated to make loans on eligible cotton, the banks were authorized agents of Commodity, and Commodity is a Department of the United States within the meaning of the statute, as above pointed; so that I see no reason why the filing of application for a loan which is false should not be considered filing a false claim against the "Government of the United States, or any department or officer thereof". As quoted above [317 U.S. 537, 63 S.Ct. 384], (the statute has been construed broadly) "to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government."

In this connection, it should be borne in mind that the notes which were tendered to Commodity were not the ordinary Commercial notes, since the government under the program had no recourse upon the makers. The maker (supposedly the producer) could in each instance pay the loan before maturity and redeem his cotton; in event of default the government is authorized to sell the cotton but must account to the producer for any surplus. The program, therefore, clearly contemplated a loss to the government to be paid out of Treasury funds. The government under the program did not agree to lend its money to speculators nor to purchase their cotton, but only agreed to give these benefits to producers on eligible cotton. So that when by false representation a person, as Toepleman, obtained a loan by which he could not suffer but by which the Government might suffer loss, he was getting benefits to which he was not entitled, and in my view this constituted filing a false claim within the meaning of the statute.

■ Toepleman's counsel also insist that there is no liability because the plaintiff was not damaged. Leaving to the side for this argument that there is evidence of damage in respect to forty-three of the notes, it appears to me that the Government's case is made by showing that a false claim was knowingly filed and that it is unnecessary to show either an intent to defraud or resulting damage. In some of the clauses of the act it is expressly provided that there must be shown an intent to defraud, but in the clause applicable here no such words are used. Proof of knowingly presenting a false claim is all that is required. The wording of the statute strongly indicates that recovery is not dependent upon proving loss or damage, since it there stated that a person doing the prohibited acts "shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages". Had the intent of Congress been that proof of damage is essential, it seems reasonable to infer that the wording would have been such as: where damage to Government is shown, the offender shall pay double the amount of same, and, in addition, shall forfeit the sum of $2,000. Nor, in my opinion, was it necessary for the plaintiff to prove profit to Toepleman.

See Rex Trailer Co. v. United States, 350 U.S. 148, 152, 76 S.Ct. 219, 222: "It is insisted, however, that the failure of the Government to allege specific damages precludes recovery here. But there is no requirement, statutory or judicial, that specific damages be shown, and this was recognized by the Court in Marcus."

■ Toepleman's counsel further insist that if plaintiff is entitled to recover anything the recovery should be limited to one forfeiture of $2,000, treating the dealings of Toepleman as a single transaction, but I am unable to see it. Each note constituted a false claim and plaintiff should recover $2,000. In each instance, or $164,000. The Marcus case sustains this conclusion.

■ The remaining question is whether the plaintiff is entitled to recover anything for damages. I think not. According to the wording of the statute, where a false claim is filed the one so filing "shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act". Obviously, "such act" means the presenting of the false claim

and the Government actually was not specifically damaged by reason of the falsity of the claim. It is true the Government lost money on some of the transactions but such loss did not result because ineligible cotton was pledged. The market value of the cotton was the same as it would have been had it been producer's cotton, and the loss here where the Government held the cotton over six years would have been exactly the same had every bale of the cotton been eligible for loan and, consequently, no false claims filed. The Government's loss was due to the drop in the price in cotton, not to the drop in the price of ineligible cotton. There was no damage to the Government within the meaning of the statute.

So that, the Government is not entitled to recover of the defendant Garland Greenway, but is entitled to recover $164,000 of the defendant Frederick L. Toepleman, together with the costs. He is entitled, as the Government agrees, to a credit of $2,000 heretofore paid without prejudice.

Judgment accordingly will enter.