**UNITED STATES of America**

**v.**

**John PETRIK.**

**No. W-943.**

United States District Court Kansas.

Sept. 20, 1956.

Royce D. Sickler, Asst. U. S. Atty., Wichita, Kan., for the United States.

Ted Hill, Wichita, Kan., for defendant.

WALLACE, District Judge.

The defendant, John Petrik, was admitted and treated at the Veterans' Hospital in Wichita, Kansas, for the surgical repair of a hernia, a disability which was not service-connected. Mr. Petrik was admitted to the hospital after signing under oath an application which included a "No" answer to a question stating "Are you financially able to pay necessary expenses of hospital or domiciliary care". It is undisputed that Mr. Petrik was able financially to pay for the treatment in question; and, that he would not have been eligible for admittance to such hospital had he answered the previously referred to question correctly.

The sole issue is whether Mr. Petrik made a "false, fictitious, or fraudulent" claim against the government, within the meaning of 31 U.S.C.A. § 231.

The gist of Mr. Petrik's defense is that he was not clear on whether or not he was eligible to be admitted to the Vet-

erans' Hospital; and, basically relied upon the VA officials to pass upon such eligibility. In addition, he testified that subsequent to the operation he offered to pay for the expenses of his medical treatment; and, that the primary motivating force in going to this hospital was not to avoid the medical expense but to receive the benefit of the fine services of this particular hospital. Moreover, the defendant urges that at the time, or within several days of the giving of the application he candidly admitted a net worth of $50,000 on the "Addendum to VA Form 10–P–10", and, that when he subsequently was admitted to the hospital he assumed he had been found eligible for such free treatment.

Although the defendant is somwhat limited in formal education, he impressed the court as a very intelligent man. And, there is no question but what he signed the application well knowing he had given a "false" answer. Such signing was done in the face of a "Warning" immediately below his signature providing: "If you knowingly make a false statement of any material fact in or in connection with this application you are subject to possible forfeiture of veterans' benefits and prosecution in a United States court." Moreover, although the defendant in the "Addendum to VA Form 10–P–10" admitted a net worth of some $50,000, with current assets of some $10,-000, he permitted the false answer in the application to stand and signed the "Addendum" immediately below another warning paragraph which stated: "The facts in the foregoing financial statement are made by me and are hereby certified to be correct to the best of my knowledge and belief. *In view thereof, I have stated under oath on VA Form 10–P–10, and hereby swear (or affirm) that I am unable to defray the necessary expenses of the hospital treatment (domiciliary care) for which I have applied."*

The defendant specifically urges that the officials of the Veterans' Adminis-tration should not have stood by mute and permitted him entrance to the hospital when he openly admitted a net worth sufficient to demonstrate he was not eligible for "free" veterans' treatment. However, this argument completely begs the question. Under the applicable law dealing with domiciliary care and hospital treatment for veterans it is provided that "The statement under oath of the applicant on such form as may be prescribed by the Administrator of Veterans' Affairs shall be accepted as sufficient evidence of inability to defray necessary expenses." 38 U.S.C.A. § 706. And, the furnished addendum is merely given to prompt the veteran into telling the truth as to his financial ability. It may be that the official could have orally questioned the advisability of the defendant's sworn statement that he was unable to pay a hospital bill of something over $200 in the face of a net worth of $50,000, and reminded the defendant that the two statements appeared to be inconsistent. However, the failure of such official to more particularly interrogate the defendant was due to the administrative policy to not become judges of the veteran's eligibility; and, thereby strictly comply with the obvious Congressional intent that needy veterans must in all instances be taken care of, with the veteran himself being the immediate judge of whether or not financially he could afford treatment elsewhere.

Although this court has carefully considered the so-called equities lying with the defendant it is inescapable that the defendant knowingly falsely swore as to his inability "to defray necessary expenses". And, regardless of his motive for so doing, whether merely to gain admittance to the Veterans Hospital or solely to gain free treatment, the defendant made a "false" claim within the purview of the relied upon "false" claim statute.