**UNITED STATES of America,**
**Appellant,**

v.

**James Howard BORTH, Appellee.**

**No. 6037.**

United States Court of Appeals
Tenth Circuit.

May 7, 1959.

Howard E. Shapiro, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Wilbur G. Leonard, U. S. Atty., Topeka, Kan., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

Vincent L. Bogart, Wichita, Kan. (David J. Wilson, Meade, Kan., and W. D. Jochems, Wichita, Kan., with him on the brief), for appellee.

Before BRATTON, Chief Judge, PICKETT, Circuit Judge, and KNOUS, District Judge.

PICKETT, Circuit Judge.

The United States brought this action to recover damages and the $2,000 statutory forfeiture provided for under the False Claims Act, 31 U.S.C.A. § 231.[1] The trial court entered a summary judgment in favor of the defendant. The determinative question presented is whether a false statement of an honorably discharged veteran of the armed services of the United States, made for the purpose of obtaining admission and free medical treatment in a Veterans' Administration hospital, creates a liability under the aforesaid statute. We agree with the trial court that it does not, and that summary proceedings were appropriate.

The pleadings and the admissions therein establish that on the 21st day of January, 1955, the defendant, a qualified veteran, made application to the Veterans' Administration for free hospitalization and treatment of a non-service-connected disability. In a sworn statement, he answered "No" to the following question: "Are you financially able to pay necessary expenses of hospital or domiciliary care?"[2] Attached to his application was an addendum, prepared as required by Veterans' Administration regulations, which contained defendant's

1. 31 U.S.C.A. § 231 provides in part:
   "Any person * * * who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, * * * service of the United States, any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the cost of suit; and such forfeiture and damage shall be sued for in the same suit."

2. 38 U.S.C.A. § 706 [now 38 U.S.C.A. § 610], provides for free hospitalization of veterans, and has this provision: "*Provided*, That any veteran of any war who was not dishonorably discharged, suffering from disability, disease or defect, who is in need of hospitalization or domiciliary care and is unable to defray the necessary expenses therefor (including transportation to and from the Veterans' Administration facility), shall be furnished necessary hospitalization or domiciliary care (including transportation) in any Veterans' Administration facility, within the limitations existing in such facilities, irrespective of whether the disability, disease, or defect was due to service. The statement under oath of the applicant on such form as may be prescribed by the Administrator of Veterans' Affairs shall be accepted as sufficient evidence of inability to defray necessary expenses."

sworn statement that he had real property of the value of $70,000; liquid assets of $6,000; average monthly income for the last six months of $400, with personal expenses of $180. The real estate was subject to a $16,000 mortgage. The Government contends that the application for free service was a claim within the meaning of the False Claims Act, and that the property statement constituted a prima facie showing that the application, insofar as it asserted an inability to defray necessary medical and hospital expenses, was false. Defendant admitted that the reasonable value of the hospital service was $231.50.

In United States v. McNinch, 356 U.S. 595, 598, 78 S.Ct. 950, 952, 2 L.Ed.2d 1001, it was said that the False Claims Act is actually "a criminal statute" and its provisions "must be carefully restricted, not only to their literal terms but to the evident purpose of Congress in using those terms, particularly where they are broad and susceptible to numerous definitions." In determining what should be considered a "claim against the Government", the court quoted from United States v. Tieger, 3 Cir., 234 F.2d 589, 591, certiorari denied 352

U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237, as follows:

"* * * 'the conception of a claim against the government normally connotes a demand for money or for some transfer of public property.'"

The court also relied upon United States v. Cohn, 270 U.S. 339, 46 S.Ct. 251, 70 L.Ed. 616,[3] and United States v. Cochran, 5 Cir., 235 F.2d 131, certiorari denied 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237. See also United States v. St. Paul Mercury Indemnity Co., 8 Cir., 238 F.2d 594; United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 2 Cir., 131 F.2d 545, affirmed 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417.

The application of the defendant sought no money or property of the Government. Its acceptance entitled him to free hospital service and medical care, but in no sense, to money or property. Of course this service had a value and was furnished by the United States at a substantial cost, but an application for this service was no more a claim for money or property than was the application for F.H.A. credit insurance in the McNinch case.[4]

---

3. The Supreme Court stated that the language of the Cohn case was relevant, and note 10 of the opinion contains the following quotation from that case: "While the word 'claim' may sometimes be used in the broad juridical sense of 'a demand of some matter as of right, made by one person upon another, to do or to forbear to do some act or thing as a matter of duty,' Prigg v. Commonwealth of Pennsylvania, 16 Pet. 539, 615, 10 L.Ed. 1060, it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant."

4. In United States v. McNinch, 356 U.S. 595, 599–600, 78 S.Ct. 950, 952, 2 L.Ed. 2d 1001, it was said:
  "The False Claims Act was originally adopted following a series of sensational

congressional investigations into the sale of provisions and munitions to the War Department. Testimony before the Congress painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war. Congress wanted to stop this plundering of the public treasury. At the same time it is equally clear that the False Claims Act was not designed to reach every kind of fraud practiced on the Government. From the language of that Act, read as a whole in the light of normal usage, and the available legislative history we are led to the conclusion that an application for credit insurance does not fairly come within the scope that Congress intended the Act to have. This question has now been considered by the Courts of Appeals for the Third, Fourth, and Fifth Circuits, as well as by District Courts in those circuits, and all have reached the same conclusion." (Footnotes omitted.)

Although the defendant, in his answer, offered to pay the reasonable value of the services as alleged in the complaint, the liability for this amount has not been presented and we do not consider or decide that question. The United States concedes that the Veterans' Administration has no power of determination of the applicant's ability to pay for his hospitalization, but must conclusively accept his sworn statement as sufficient evidence of that fact. Congress evidently intended that this situation should remain, as in 1953, as pointed out in the Government's brief, it specifically refused to give the Veterans' Administration power to investigate an applicant's ability to pay. Hearings, 83rd Cong., 1st Sess., p. 1871 (1953); 99 Cong.Rec. 6740, 6743–51, 6831.

Affirmed.