**UNITED STATES of America,
Plaintiff,**

v.

**Louis Isaac ALPERSTEIN, Defendant.**

**Civ. No. 8948-M.**

United States District Court
S. D. Florida.
Miami Division.
April 20, 1960.

E. Coleman Madsen, U. S. Atty., Miami, Fla., for plaintiff.

Martin Schwartz, Coral Gables, Fla., for defendant.

4. Rios v. United States, 1959, 359 U.S. 965, 79 S.Ct. 881, 3 L.Ed.2d 833; El- kins v. United States, 1959, 361 U.S. 810, 80 S.Ct. 61, 4 L.Ed.2d 58.

CHOATE, District Judge.

The United States brings this suit under the False Claims Act, R.S. 3490, 5438, 31 U.S.C.A. 231 et seq., alleging that the defendant, an honorably discharged veteran of World War I, filed two false claims for free hospitalization, that the Government furnished the hospitalization to which the defendant was not entitled, and that the defendant is liable for damages prescribed by statute.

On July 6, 1956, the defendant was examined at his doctor's office. After defendant informed the doctor that he was a veteran, he was told to seek admission to the Veterans Administration hospital at Coral Gables, Florida. On the same day the defendant was driven to the hospital by his wife who waited outside while the defendant applied for admission. A Veterans Administration employee asked the defendant questions and accurately transcribed the defendant's answers by typewriter on VA form 10–P–10 dated July 6, 1956, which the defendant signed. The defendant then executed in his own handwriting VA form 10–P–10a and dated it the same day. The latter form is an addendum to the principal application, 10–P–10. The addendum contains questions concerning specific aspects of an applicant's financial status. On the same day the defendant was admitted to the hospital with an initial diagnosis of cardiac decompensation. He was discharged on September 21, 1956. During the period of hospitalization the defendant was found to have the following conditions: chronic lymphocytic leukemia, organic heart disease and diabetes mellitus, none of which have been determined to be service-connected.

The defendant again applied for admission to the same hospital on May 2, 1957, at which time he executed the application and financial addendum. He was hospitalized on the same day and was discharged on May 7, 1957.

Question No. 28 on VA form 10–P–10 appears as follows:

"28. Are you financially able to pay necessary expenses of hospital or domiciliary care?
Check One
☐ Yes     ☐ No"

At the time of each admission to the hospital the defendant answered this question in the negative. On each occasion the defendant answered the financial addendum questionnaire, VA form 10–P–10a, by stating that he had $5,000 in current ready assets, an average income of $108 per month during the last six months, and average monthly expenses of $200 and no other property, real or personal. The facts were that at the time of the first application for admission to the hospital, the defendant knew that he was the sole owner of ready assets in excess of $11,500 and that he held jointly with his wife other assets of a value in excess of $50,000. These amounts had not diminished appreciably by May 2, 1957, the date of his second application for admission. The value of the hospitalization rendered to the defendant was computed by the VA and admitted by the defendant to be $19.25 per day for each day of the two periods of hospitalization, being a total of $1,001. The defendant knew at the time he submitted his applications that he misrepresented his true financial ability and he knew that his representations in both applications, that he was unable to pay necessary expenses of hospital or domiciliary care, were false. Although defendant claimed ignorance of the law, and that illness prevented him from having the capacity to intend a fraud on the government, nevertheless, it is clear that the defendant knowingly made the false claims for the purpose of obtaining free hospital services, knowing that he was not entitled to such free services, and that as a direct result the VA rendered the services, as required by law, upon his answer claiming financial inability.

The statute under which hospitalization is furnished, 48 Stat. 525, 38 U.S. C. § 706 (1952),* provided in pertinent part:

* Now 38 U.S.C.A. §§ 610, 621(2), 622.

"* * * That any veteran of any war who was not dishonorably discharged, suffering from disability, disease or defect, who is in need of hospitalization or domiciliary care and is unable to defray the necessary expenses therefor (including transportation to and from the Veterans' Administration facility), shall be furnished necessary hospitalization or domiciliary care (including transportation) in any Veterans' Administration facility, within the limitations existing in such facilities, irrespective of *whether the disability, disease, or defect was due to service.* The statement under oath of the applicant on such form as may be prescribed by the Administrator of Veterans' Affairs *shall* be accepted as sufficient evidence of inability to defray necessary expenses." (Emphasis added.)

■ The statute is mandatory in terms, leaving no discretion to the Administrator of Veterans Affairs or to his designates or subordinates as to the admission or rejection of applicants. It establishes a simple standard of eligibility and evidence of qualification, which, when met, automatically precludes the Veterans Administration from refusing to provide the applicant with hospitalization. When the applicant proves that he is an otherwise eligible veteran, and when he states that he is unable to defray the cost of hospitalization, the Veterans Administration has no choice other than to admit him and treat him. United States v. Petrik, D.C.D.Kan., 154 F.Supp. 598.

■ The legal question presented by this case is whether defendant's acts constitute violations of the False Claims Act (31 U.S.C.A. § 231), the pertinent provision of which recites:

"Any person not in the military or naval forces of the United States, or in the militia called into or actually employed in the service of the United States, who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, *any claim upon* or against the Government of the United States, or *any department* or officer thereof, knowing such claim to be false, fictitious, or fraudulent, * * * shall forfeit and pay to the United States the sum of $2,000, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of suit; and such forfeiture and damages shall be sued for in the same suit." (Italics supplied.)

More specifically, the question is whether, in applying for free hospitalization at a Veterans Administration facility, the defendant made a "claim" upon or against the Government of the United States. There have been up to the present only two reported decisions on the point. United States v. Petrik, D.C. D.Kan., 154 F.Supp. 598, held that the application constituted a "claim" and that a fraudulent application subjected the applicant to the civil sanctions of the False Claims Act. The Tenth Circuit Court of Appeals in United States v. Borth, 266 F.2d 521, 523, reached a contrary result. With all due deference to the Tenth Circuit Court of Appeals I feel that a "false claim" as used in the statute is not confined to a claim for *money or property but does comprehend a claim for valuable services accompanied by the furnishing of medicine, drugs, food, and the like. It is further to be noted that drugs, food, and medicine which were to be furnished to the defendant as he knew when he applied, are indisputably "property".

The basic premise of the Borth decision was that an application for hospitalization is not a "claim" within the False Claims Act because it does not demand "money or property." This requirement was inferred from the language of the Supreme Court in United States v. McNinch, 356 U.S. 595, 598, 78

S.Ct. 950, 952, 2 L.Ed.2d 1001, where it quoted with approval the language of the Third Circuit Court of Appeals in United States v. Tieger, 234 F.2d 589, 591, to the effect that " \* \* \* the conception of a claim against the government normally connotes a demand for money or for some transfer of public property." In reaching the result that it did in the Borth case, the court also said that the situation involving a false application for free Veterans Administration hospitalization is no different from that presented to the Supreme Court in United States v. McNinch, supra.

The McNinch case decided only that an application to a bank for a Title I home improvement loan, with the intent that Federal Housing Administration would insure the bank against loss by reason of the loan, did not give rise to a claim against the Government. In that case, since there was no default on the loan, there was no occasion for the bank to make a claim upon FHA for payment under its insurance policy. The Court observed, in pertinent part:

> "In agreeing to insure a home improvement loan, the FHA disburses no funds nor does it otherwise suffer immediate financial detriment." 356 U.S. 599, 78 S.Ct. 952.[1]

Unlike the extension of credit insurance, hospitalization service and care are not mere bookkeeping entries which possibly may become expenses in the future. They represent a substantial expenditure of funds and "financial detriment" immediately upon the patient's admission to the hospital, and during his hospitalization they include room and board, medicines, and costly medical services and supplies, in short, they involve property and things of very definite tangible value.

Furthermore, the use of the word "normally" in the quotation in the McNinch case, itself reflects that the money-or-property criterion is not an absolute and inflexible one. It must be interpreted and applied, not only in the light of the constantly expanding concept of "property" in modern times, but in light of the Supreme Court's emphasis in McNinch on the fact that in agreeing to extend credit insurance to a bank the Government did not "suffer immediate financial detriment". That the Government in the instant case did suffer such immediate financial detriment and loss of property furnished is clear, and, in fact, this was conceded by the Circuit Court of Appeals in Borth, where the court said:

> "Of course this (hospitalization) service had a value and was furnished by the United States at a substantial cost \* \* \*."

Moreover, even under a narrow construction of the word "property", I believe that an application for free admission to a hospital, with all the necessary incidents of such hospitalization, satisfies the "property" requirement. When a patient enters a hospital he expects to receive not merely "service" and "care" as isolated commodities, but he expects to receive food, shelter, drugs, the use of medical equipment, personal items such as linen, toiletries and pajamas all of which constitute a significant portion of the expense of hospital service and treatment. He also expects the services of staff and consulting physicians, nurses, technicians and maintenance crews, whose compensation costs are understood to be included within the normal expense of hospitalization. Therefore, inherent in hospitalization is the use and transfer of actual chattels and property and the expenditure of money or money's equivalent by or for the benefit of the patient.

I have considered the Supreme Court's caution in construing the meaning of a "claim against the Government" because the civil act evolved from a criminal stat-

---

1. Where a default occurs and FHA actually indemnifies a Lender who made a claim upon the insurance policy, the person who submitted the false loan application is subject to the False Claims Act. United States v. Veneziale, 3 Cir., 1959, 268 F. 2d 504.

ute; United States v. McNinch, 356 U.S. at page 598, 78 S.Ct. at page 952. Essentially, the Court reaffirmed its earlier rule that, after exercising the prudence indicated by the statute's history, " * * * we must give it the fair meaning of its intendment". United States ex rel. Marcus v. Hess, 1943, 317 U.S. 537, 542, 63 S.Ct. 379, 383, 87 L.Ed. 443.

To my mind there is no logical, realistic or legal justification for distinguishing a claim for expensive (to the Government) hospitalization from any other claim for money or for the transfer of public property. The claims which the defendant filed are within the scope of the False Claims Act. Since the preponderance of clear and convincing evidence established that the defendant filed false claims knowing them to be false, he is liable for the damages provided by the statute.