**UNITED STATES of America, Plaintiff,**

v.

**Milton W. SCHMIDT, Defendant.**

**No. 60–C–213.**

United States District Court
E. D. Wisconsin.

May 9, 1962.

James B. Brennan, U. S. Atty., by Louis W. Staudenmaier, Jr., Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Robert G. Polasek, Cudahy, Wis., for defendant.

GRUBB, District Judge.

This is a civil action brought by the United States under the False Claims Act, 31 U.S.C.A. § 231 et seq., alleging that the defendant in applying for free medical treatment for a non-service connected disability at the Veterans Administration Hospital made a "false claim" against the United States in certifying that he was financially unable to defray the cost of private treatment, knowing that such certification was "false, ficti-

tious, or fraudulent." The statute provides for a forfeiture to the United States in the sum of $2,000 and, in addition, double the amount of damage which the United States may have sustained. In this action the cost of hospitalization was $323.50.

Section 706, 38 U.S.C.A. (1952 ed.),* provides that veterans are eligible for free hospitalization for non-service connected disabilities if they are unable to defray the necessary expenses therefor, and the statement under oath of the applicant shall be accepted as sufficient evidence of inability to defray necessary expenses.

There is very little dispute as to the facts. The defendant, a World War II veteran, had been suffering with ulcers prior to October 30, 1957. He had had one hospitalization. His personal physician recommended to him that he go to the Veterans Administration Hospital for treatment.

A few days before October 30, 1957, defendant received a medical examination at the Veterans Administration Hospital at Wood, Wisconsin, and had been declared eligible for treatment so far as the medical staff was concerned. On October 30, 1957, he made application for treatment. This application was in writing. A Mrs. Rudolph, admissions clerk, typed the information furnished by the defendant on VA Form 10–P–10, "Application for Hospital Treatment or Domiciliary Care," and on the "Addendum to VA Form 10–P–10."

In answer to question 14 on said application, defendant gave as his occupation "Sporting Goods Store Operator—Owner." In answer to question 27, he stated that he had hospital care insurance. Question 27A inquires as to the agency or organization, and defendant answered "Personal Policy—Metropolitian (sic) Life, Milw., Wisc." Question 28 reads: "Are you financially able to pay necessary expenses of hospital or domiciliary care?" Below the question are two squares, one followed by the word "Yes"

---

* Now 38 U.S.C.A. § 610, 621(2), 622.

and the other followed by the word "No." Either the defendant or Mrs. Rudolph originally answered this question "Yes."

At the same time, defendant gave Mrs. Rudolph information from which she filled in the addendum to the application. This addendum shows net assets in the total amount of $68,300. In answer to question 28 I in the addendum, defendant stated that his average monthly income for the last six months was $1,500.

Mrs. Rudolph stated to defendant that with question 28 answered "yes," he was not eligible to receive hospital care. At this point there is some uncertainty in the testimony of Mrs. Rudolph as to the conversation. Mrs. Rudolph, while impressing the court as a frank and conscientious witness, testified that during her time at the Veterans Administration Hospital as admissions clerk, she filled in twenty to forty applications daily. It was some years later that this particular application was called to her attention, and while she made a conscientious attempt to recall the conversation in detail, it stands to reason that her recollection would not be as accurate as the recollection of the defendant who had only one experience like this.

Defendant's testimony was that Mrs. Rudolph had stated that there were many veterans in the hospital who had more assets than did defendant, and that they got in by answering question 28 "no." She stated that it was up to the defendant as to how he should answer that question but that he could not get in the hospital unless he answered it "no." Neither could recall whether Mrs. Rudolph erased the "yes" in answer to question 28 and answered it "no" or whether the defendant did following the conversation. Mrs. Rudolph did not tell the defendant the penalty for any false answers, as she testified that she did not even know the penalty.

The defendant impressed the court as being completely frank, fair, and honest. He certainly was in the information he gave Mrs. Rudolph, and he also was on the witness stand, readily admitting all matters adverse to his interests.

At the pretrial conference held November 29, 1961, counsel for the plaintiff and counsel for the defendant agreed that "The principal issue involved in this case is the intent of the defendant—did he intend to violate the statutes and regulations of the Veterans Administration."

All of the information was at all times available to Mrs. Rudolph and to the Veterans Administration Hospital. On leaving the hospital, the defendant endeavored to pay the bill through his hospital insurance company. The defendant and his insurance company had great difficulty getting figures from the hospital, although both were at all times ready, willing, and anxious to reimburse the plaintiff. That willingness continued up to and including the pretrial conference, at which time the defendant again wanted to reimburse the government for the cost of his hospitalization plus interest thereon.

The legal questions involved are:

1. Whether the defendant presented for payment or approval " * * * any claim upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, * *." The statute also prohibits the making of any such false, fictitious, or fraudulent claim substantiated by any affidavit or deposition, knowing the same to contain any fraudulent or fictitious statement.

2. Whether this application, assuming it can be construed as presenting a claim for payment or approval, was false, fictitious, or fraudulent within the meaning of the statute.

█ With regard to the first issue, the definition of a "claim" has been defined by the Supreme Court in United States v. Cohn, 270 U.S. 339, at pages 345–346, 46 S.Ct. 251, at page 252, 70 L.Ed. 616 (1926), as follows:

" * * * While the word 'claim' may sometimes be used in the broad juridical sense of 'a demand of some matter as of right made by one person upon another, to do or

to forbear to do some act or thing as a matter of duty,' Prigg v. Pennsylvania, 16 Pet. 539, 615 [10 L.Ed. 1060, 1089], it is clear, in the light of the entire context, that in the present statute, the provision relating to the payment or approval of a 'claim upon or against' the Government relates solely to the payment or approval of a claim for money or property to which a right is asserted against the Government, based upon the Government's own liability to the claimant. * * * "

This conception of a "claim" as connoting a demand for money or for some transfer of public property under this statute was again applied in United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958), in which an application for F.H.A. credit insurance was held not to be a "claim." As to the specific issue here, i. e., whether an application for hospital care at the Veterans Administration is a "claim," the following statement in United States v. Borth, 266 F.2d 521, at page 523 (10th Cir. 1959), is persuasive:

"The application of the defendant sought no money or property of the Government. Its acceptance entitled him to free hospital service and medical care, but in no sense, to money or property. Of course this service had a value and was furnished by the United States at a substantial cost, but an application for this service was no more a claim for money or property than was the application for F.H.A. credit insurance in the McNinch case."

This court recognizes that the Fifth Circuit, in a case where there was actual fraud, by a divided court disagreed with the Borth decision in Alperstein v. United States, 291 F.2d 455 (1961). This court agrees with the Court of Appeals of the Tenth Circuit in the Borth case and with the dissenting judge in the Alperstein case that the application for hospital care is not a claim within the statute based on the Cohn, McNinch, and Borth cases, supra, which are controlling authorities here.

With regard to the second issue, plaintiff contends that liability is established merely by showing that the statement was false and defendant knew it was false, and that fraud or intent to defraud the government is not a necessary element of the offense. The statute uses the words "false, fictitious, or fraudulent." Plaintiff's theory that intent to defraud is not an element finds support in United States v. Toepleman, 141 F.Supp. 677, 683 (E.D.N.C.1956), reversed on other grounds in United States v. McNinch, 242 F.2d 359 (4th Cir. 1957). The Supreme Court reversed the Court of Appeals in United States v. McNinch, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958), upon the sole ground that a claim upon the Commodity Credit Corporation was not a claim "against the Government of the United States, or any department or officer thereof" within the meaning of the False Claims Act. The elements of liability under the statute were not issues on the appeal. Moreover, it is clear that the defendant in that case was guilty of actual fraud, so that the statement of the district court was dicta. See the opinion on remand—Toepleman v. United States, 263 F.2d 697, 700 (4th Cir. 1959), cert. denied sub nom. Cato Bros., Inc. v. United States, 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959).

Although an action by the United States under the statute is civil in nature, it has been held that " * * * it is not only penal, but drastically penal. * * * For this reason it has been strictly construed. * * * " United States ex rel. Brensilber v. Bausch & Lomb Optical Co., 131 F.2d 545, 547 (2d Cir. 1942), aff'd 320 U.S. 711, 64 S.Ct. 187, 88 L.Ed. 417 (1943). In that decision the court also pointed out at page 546 of 131 F.2d that:

" * * * the statute certainly makes fraud of some sort the basis of the liability, and uses the word in its accepted sense of deceit, as appears from the juxtaposition of the three adjectives, 'false,' 'ficti-

tious' and 'fraudulent.' Therefore, although by hypothesis it would be enough that a claimant secured his contract by deceit, deceit is a sine qua non; it will not serve that he secured it by any other kind of wrong. * * *"

 In order to recover the prescribed penalties under this statute, therefore, the United States must prove fraud in its accepted sense, i. e., a false representation of a material fact made with knowledge of its falsity *and with the intent to deceive* the other party, which representation must be believed and acted upon by the party deceived to his damage. United States v. National Wholesalers, 236 F.2d 944, 950 (9th Cir. 1956), cert. denied 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 724 (1957); United States v. Goldberg, 158 F.Supp. 544 (E.D.Pa. 1958); United States v. Park Motors, Inc., 107 F.Supp. 168 (E.D.Tenn.1952); United States v. United States Cartridge Co., 95 F.Supp. 384 (E.D.Mo.1950); Cahill v. Curtiss-Wright Corporation, 57 F.Supp. 614 (W.D.Ky.1944).

 Although the addendum to the application may not be used by the Veterans Administration to deny hospitalization to a veteran who states under oath that he is unable to pay necessary expenses of hospital care, according to Circular No. 11 issued by the Veterans Administration on November 4, 1953, it certainly cannot be said that there was any intent to defraud or deceive on the part of the defendant.

Moreover, the face of the application itself discloses insurance coverage which could not have been ignored by the Veterans Administration officials. This fact alone distinguishes the cases cited by plaintiff—United States v. Alperstein, 183 F.Supp. 548 (S.D.Fla.1960), and United States v. Petrik, 154 F.Supp. 598 (Kan.1956)—in which the defendants were held liable under the False Claims Act for false statements to the Veterans Administration. Moreover, in the Alperstein case the defendant had grossly misrepresented his true financial condition, whereas in the instant case the defendant made a full and complete disclosure of his assets. If anything, he overstated his financial condition.

The court finds that the defendant had no intention to commit fraud and no intention to violate the statute, that the defendant made a full and fair disclosure, and that the plaintiff had all pertinent information.

The foregoing contains the court's findings of fact and conclusions of law in conformity with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The clerk is hereby directed to enter judgment for the defendant, dismissing the complaint.