**1012**

UNITED STATES of America,
Plaintiff,

v.

James L. SHANKS, Defendant.

Civ. A. 66–C–305.

United States District Court
D. Colorado.

Nov. 28, 1966.

Richard T. Spriggs, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Harry L. Arkin, and Alan H. Bucholtz, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on defendant's motion to dismiss the plaintiff's amended complaint for failure to state a claim upon which relief can be granted. In the amended complaint the government asserts that defendant was unjustly enriched by having received on three occasions hospitalization services and goods from the Veteran's Administration Hospital in Denver, Colorado, without making payment. The government urges that such benefits were "erroneously and wrongfully" rendered to defendant by employees of the government and that plaintiff has the right and even the obligation to seek payment from defendant for the value of the benefits.

Title 38 U.S.C. § 610(a) (1) (B) provides that a war veteran may be furnished hospital care "for a non-service-connected disability if he is unable to defray the expenses of necessary hospital care". In order to administer the veteran's hospitalization program defined by the statute, the Veteran's Administration provides applicants with a form containing an oath that the applicant is unable to defray the necessary expenses. Another statutory provision, Title 38 U.S.C. § 622 provides that such a statement under oath "shall be accepted as sufficient evidence of inability to defray necessary expenses".

It is the basic contention of the government, as plaintiff in this case, that the defendant signed such a statement under oath and received hospitalization benefits for a nonservice connected disability when he was in fact financially

able to defray the necessary expenses. In such a case, plaintiff argues, it can in effect go behind the veteran's affidavit and seek collection of the value of the hospitalization benefits in the Federal district courts.

■ In earlier cases of this kind the government has attempted to recover under the provisions of the False Claims Act, Title 31 U.S.C. § 231 et seq. Alperstein v. United States, 291 F.2d 455 (5th Cir. 1961); United States v. Borth, 266 F.2d 521 (10th Cir. 1959); United States v. Schmidt, 204 F.Supp. 540 (E.D. Wis.1962); United States v. Petrik, 154 F.Supp. 598 (D.Kan.1956). It is quite clear that no recovery is possible on this theory in the Tenth Circuit. United States v. Borth, supra.

As the government points out, however, recovery is sought on a different basis in the present case. Here the claim is one for restitution, and the analogy is drawn to the body of case law holding that the government can always recover payments wrongfully and erroneously made by government officials or employees. See, for example, United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938).

■ The crucial determination in this case is essentially one of legislative intent: Did Congress intend that an applicant's statement under oath should constitute conclusive evidence of his entitlement to the hospitalization benefits, or was it rather intended that if it were determined that the applicant *could* afford to pay for the hospitalization, he must make payment or be exposed to litigation in the United States courts?

In searching for the legislative intent it is important to note the language of a provision in 38 C.F.R. § 17.47 concerning eligibility for hospitalization for non-service connected disability. The regulation provides that care may be furnished applicants "who *swear* that they are unable to defray the expense of hospital or domiciliary care * * *" (Emphasis added). Thus the regulation seems to indicate that the applicant's

sworn oath will of itself determine whether he may receive care. There is *no* provision in either the statutes or the regulations which requires or even allows the government to investigate the applicant's ability to pay, or which authorizes the executive branch of the government to seek payment for hospitalization expenses in the federal courts.

The statutes and regulations which have been cited appear on their face to *preclude* the government from looking behind the veteran's sworn oath as to his ability to pay for hospitalization. These statutory provisions apparently reflect a view that the oath of an American war veteran will be honored in every case, and that it would be far better that ten veterans who can afford hospitalization receive free benefits than that one veteran who is unable to defray the expenses be denied the benefits.

Although the view is a laudable one, it is an unfortunate fact that the oath *has* been abused and some veterans who were able to pay have apparently sworn to the contrary in order to receive free hospitalization.

It was this abuse which led Congress to consider a proposed amendment to the statute which would have allowed the Veteran's Administration to investigate the ability of an applicant to defray hospitalization expenses. The proposal was thoroughly considered in Congressional hearings in 1953, and it was apparently concluded that such an amendment would cause considerable administrative difficulties and would simply make the situation worse than it already was. The proposal was criticized as being one which would virtually convert the Veteran's Administration into a collection agency. 83d Cong., 1st Sess., 99 Cong.Rec., p. 6740 (1953).

Congressman Barden of North Carolina expressed his grave doubts about the feasibility of the proposed amendment:

I do not know how they would proceed to collect payments due, whether they would turn the matter over to

the Attorney General, whether it would be a Federal procedure for him to prosecute the veteran in the district court of the United States and perhaps in the end sell everything the veteran had except his homestead. 99 Cong.Rec. at p. 6746.

It was this type of collection machinery which apparently did *not* appeal to Congress and which prompted them to defeat the proposal. Yet, obviously, it is this very form of collection for which the government now seeks a judicial imprimatur. We are unwilling to make a holding which would fly so squarely in the face of the legislative intent. The executive department is now asking the Court to arrogate unto itself what is clearly a power and function of the legislative branch. We refuse to do so.

The government's claim for restitution is based upon their assertion that the services received by defendant constituted erroneous and wrongful payments by government employees. As defendant points out, no *money* was paid to defendant by the government, and the cases cited by plaintiff are therefore somewhat inapposite. An even more fundamental reason for rejecting the government's theory, however, is that those employees who permitted defendant to enter the hospital and receive treatment were *not* acting "wrongfully and erroneously". The very opposite fact is true. When employees or officials of the Veteran's Administration admit and give treatment to a veteran who has signed the financial oath, they are scrupulously obeying the mandate of the statutes and regulations of the United States.

If the government's contention were correct, the hospital employee would be put to a curious sort of Hobson's choice. If, upon receiving a veteran's oath, the employee denied hospital admission and treatment he would be contravening the statutes; but if he obeyed the statutes and admitted the veteran on the strength of his oath, he would be acting in what his employer might later label an "er-roneous and wrongful" manner. Such a characterization is of course absurd.

Plaintiff has cited one case in which recovery was sought from the veteran defendant on the same theory as in the present case. In the cited decision, United States v. Reitzel (Civil Docket #1861, D.Ariz.1962), the judge entered conclusions of law which did indeed adopt the government's present position. It is the opinion of this Court, however, that Judge Walsh's findings in Reitzel failed to give proper effect to the legislative intent and the Court is therefore not disposed to adopt them.

As noted earlier in this opinion, Congress feared that if the Attorney General were allowed to "prosecute" the veteran in the courts, the veteran might eventually lose everything but his homestead. This was practically the result of the suit in the Reitzel case.

The action was brought against Reitzel's executrix following his death. At the time of his death he apparently owned in excess of $27,000 in cash assets and savings bonds. The amount of the recovery for hospitalization benefits which was allowed against the estate was $22,-208.73. Obviously there are no helpful guideposts for determining at the time of admission how much hospitalization expense one will ultimately incur. If Mr. Reitzel had incurred a $28,000.00 expense, would this mean that, viewed in retrospect, he would have been financially *unable* to defray the necessary expenses and therefore entitled to free benefits? If the answer to that query is yes, then this would certainly be an unpalatable sort of irony.

It was this type of administrative problem which compelled Congress to reject the proposed amendment in 1953 and, in spite of some abuses, to allow the signed oath of a war veteran to admit him to the hospital and entitle him to the free benefits. The Court is in no sense voicing approval of the actions of those veterans who abuse the system, but is simply recognizing that the remedy for abuse must come from Congress and not

from the judiciary. "When the legislative purpose is so plain, we cannot assume to do that which Congress has refused to do." Southern Steamship Co. v. N. L. R. B., 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942). The Veteran's Administration knew in 1953 that the law gave it no right to go behind the veteran's affidavit, 99 Cong.Rec. at 6741, and this fact has been clearly recognized by the Court of Appeals of the Tenth Circuit. United States v. Borth, supra. Such a right has not been since conferred.

The plaintiff's claim is without merit, and it is therefore

Ordered that the motion of defendant to dismiss the amended complaint for failure to state a claim be, and hereby is, granted; and plaintiff's action is hereby dismissed.