**UNITED STATES of America,
Appellant,**

v.

**James L. SHANKS, Appellee.**

**No. 9326.**

United States Court of Appeals
Tenth Circuit.

Sept. 7, 1967.

Rehearing Denied Dec. 12, 1967.

David T. Lewis, Circuit Judge, dissented.

Robert C. McDiarmid, Atty., Department of Justice (Barefoot Sanders, Asst. Atty. Gen., Lawrence M. Henry, U. S. Atty., and Alan S. Rosenthal, Atty., Department of Justice, on the brief), for appellant.

Alan H. Bucholtz, Denver, Colo. (Harry L. Arkin, Denver, Colo., on the brief), for appellee.

Before LEWIS, BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The United States sued to recover the value of Veterans' Administration (V.A.) hospital care furnished to appellee-defendant Shanks. The trial court sustained a motion to dismiss the complaint and this appeal followed.

The complaint as originally filed alleged that on three occasions the defendant executed an oath asserting inability to pay the costs of, and received without charge, medical and other services at the Denver V.A. hospital when he was financially able to pay for such services. In dismissing the complaint the trial court held that the action could not be maintained because of our decision in United States v. Borth, 10 Cir., 266 F.2d 521, and because the complaint did not charge fraud.

The pertinent allegations of the first count of the amended complaint are that on three occasions the defendant applied for hospital and medical care; that

each application was made on the basis of the defendant's inability to pay; that the applications were "erroneous and incorrect" in that he was able to pay; that the value of the services received was $1,022.90; and that because of the "incorrect and erroneous applications" the government expended the value of the services contrary to 38 U.S.C. § 610(a) (1) (B). The second count alleges that on the basis of the same facts the defendant "received and was unjustly enriched" by the value of the services and benefits received.

In 38 U.S.C. § 610 it is provided that:

"(a) The Administrator, within the limits of Veterans' Administration facilities, may furnish hospital care which he determines is needed to—

(1) (A) any veteran for a service-connected disability; or

(B) a veteran of any war or of service after January 31, 1955, for a non-service-connected disability if he is unable to defray the expenses of necessary hospital care; * * *."

It is further provided in 38 U.S.C. § 622 that:

"For the purposes of section 610(a) (1) * * * of this title, the statement under oath of an applicant on such form as may be prescribed by the Administrator shall be accepted as sufficient evidence of inability to defray necessary expenses."

The trial court adopted the defendant's theory that the pertinent legislation and its history show a congressional intent that the United States may not recover the value of hospital services furnished by V.A. to a veteran for a non-service-connected disability upon that veteran's erroneous evaluation of his ability to pay.

The statutory provisions which are codified as § 610(a) and § 622 were enacted as part of the Independent Offices Appropriation Act of 1935.[1] In 1953, an attempt was made in the House to include in an appropriations bill a rider which would have amended § 610 to direct the V.A. to investigate statements of inability to pay and to attempt to collect in accordance with ability to pay. After extended discussion [2] the rider was defeated. Among objections raised was the assertion that the matter should be considered by the Committee on Veterans' Affairs. In 1954, the Subcommittee on Hospitals of the Committee on Veterans' Affairs reported a resolution unanimously approved by both the subcommittee and the full committee [3] which, after referring to the "entitlement and eligibility of veterans for hospital care," recited that:

"Whereas the Veterans' Administration has issued an addendum to the admission application form for hospital care requiring the listing of assets and liabilities for non-service-connected cases; * * *."

Included among the resolutions of the committee are the following:

"*Resolved,* That the Committee on Veterans' Affairs urges the cooperation of all veterans' groups and all other parties interested in medical care for veterans that the new admission policy be given a fair trial and period of operation before any final conclusion is reached on its workability or feasibility; and be it further

*Resolved,* That no legislation be considered on this subject until the effect of the new policy has been determined; * * *."

Although the matter is not free from doubt, we do not read into the legislative history, as the trial judge did, a congressional intent that V.A. should not collect from veterans able to pay when they are hospitalized for a non-service-connected disability. The debate in 1953 shows concern with care for needy veterans, with the use of V.A. hospitals in competition with other hospitals when a patient

---

1. P.L. 141, 73rd Cong., 48 Stat. 509, 525.

2. See 99 Cong.Rec. pp. 6730–6751.

3. See 100 Cong.Rec. p. 3806.

can pay, with the use of the V.A. as a collection agency, and with propriety of enacting the proposed legislation as a rider to an appropriation bill.

The emotional arguments for and against the rider do not change the law. Section 610(a) says that the Administrator may furnish hospital services for non-service-connected disabilities if the veteran "is unable to defray" such expenses. Section 622 says that an application under oath "shall be accepted as sufficient evidence of" such inability. This means that the V.A. hospital will receive the veteran without investigation of ability to pay. Neither section provides that the services will be without charge if the veteran is able to pay. Absent such a provision, there is no statutory inhibition against the government collecting, after services are rendered, from a veteran able to pay.

United States v. Borth, 10 Cir., 266 F.2d 521, was an action to recover damages and the statutory forfeiture under the False Claims Act, 31 U.S.C. § 231. We denied recovery on the grounds that the Act applied to claims for money or property of the government and did not apply to services. The question of civil liability for the value of the services was expressly left open.

▮▮ Defendant challenges the right of the United States to maintain the action and says that no decision permits recovery by the United States for the value of services rendered by its agents and employees. The principle is well established that the United States "like any other owner of property, may have its property rights adjudicated by a court of competent jurisdiction." [4] It has long been settled that the United States may sue on a non-statutory cause of action.[5]

In United States v. San Jacinto Tin Company, 125 U.S. 273, 279, 8 S.Ct. 850, 854, 31 L.Ed. 747 it is said that the principle that "the United States should not be more helpless in relieving itself from frauds, impostures, and deceptions than the private individual, is hardly open to argument."

▮ The failure of the complaint to allege fraud is no impediment to recovery. The claim is that the services were rendered on the basis of "erroneous and incorrect" applications. Restitution may be had for services rendered because of "an innocent but material misstatement." [6]

Reversed and remanded for further proceedings consistent with this opinion.

DAVID T. LEWIS, Circuit Judge (dissenting).

By a two count complaint, characterized by the government as a count in the "nature of assumpsit" and one for unjust enrichment, the United States seeks to recover the value of medical services rendered to the defendant through the facilities of the Veterans Administration. The essence of the government's claim to right is contained in its amended complaint in these words:

"7. By reason of the incorrect and erroneous applications, incorrect and erroneous approval of the applications, and incorrect and erroneous admissions to the hospital, the plaintiff erroneously and wrongfully expended the value of the hospitalization services, goods and benefits contrary to the provisions of the statute authorizing the plaintiff to provide such services, 76 Stat. 381, 38 U.S.C. 610(a) (1) (B)."

Upon appeal, the government now asserts, and the main opinion holds, that

---

4. Archer v. United States, 10 Cir., 268 F.2d 687, 689. See also Rex Trailer Co. v. United States, 350 U.S. 148, 151, 76 S.Ct. 219, 100 L.Ed. 149, and Cotton v. United States, 52 U.S. 229, 11 How. 229, 231, 13 L.Ed. 675. United States v. Wurts, 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932, permitted recovery of funds erroneously paid by federal agents.

5. Dugan v. United States, 16 U.S. 172, 3 Wheat. 172, 180–181, 4 L.Ed. 362; United States v. Buford, 28 U.S. 12, 3 Pet. 12, 30, 28 U.S. 12, 7 L.Ed. 585; and United States v. Tingey, 30 U.S. 115, 5 Pet. 115, 127–128, 8 L.Ed. 66.

6. Restatement, Restitution, § 40 and comment under clause (a), p. 156.

the plaintiff (V.A.) neither in error nor wrongfully admitted the defendant to the hospital and there treated him but that it did so through the compulsion of the congressional mandate that the oath of applicant "shall be accepted as sufficient evidence of inability to defray necessary expenses." 38 U.S.C. § 622. To me, the argument of the government is in defiance of its pleading, is self-denying of its claim, and would be sufficient to warrant affirmance of the trial court in dismissing the action as pleaded. However, since the case has been argued and briefed to an extent far past a question of pleading I am content to so consider it for I believe the judgment below should be affirmed in any event. But in so doing I consider it permissive to make reference to facts presented by the government but not contained in the pleadings.

The government does not claim that defendant in his application made any express misrepresentation of his financial condition, his assets or liabilities, or that he concealed anything. The only "incorrect and erroneous" statement relied upon is the conclusionary statement that defendant was "unable" to defray the necessary expenses of hospital care. Presumably, the government upon trial will now contend that defendant's net worth will indicate the fact of ability to pay; defendant will contend that his total lack of cash, liquid assets, his modest income and his family obligations will show his inability to pay. The case is also complicated by the fact that the government seeks recovery for services rendered upon three separate occasions each one following a separate application resulting in treatment accorded in December 1962, March 1963, and October-December 1963.

The type of controversy which this case presents would seem to typify the very situation in which Congress has indicated its unwillingness to allow the V.A. or the Attorney General to participate. The legislative history clearly apprehends and rejects the concept that the V.A. should function as a collection agency, 99 Cong.Rec. p. 6740 (1953), or that the Attorney General be allowed to "sell everything the veteran had except his homestead," p. 6746, and the resolution of the Committee on Veterans Affairs, 100 Cong.Rec. p. 3806, indicates a clear intent to accept the veteran's sworn statement with finality for all purposes until and if it appears that different legislation is required.

I would affirm. The trial court correctly held that the problem is one for Congress, not the courts.