621 F.2d 98
 The UNIVERSITY OF MARYLAND, Appellant,
v.
Max CLELAND, Administrator of Veterans Affairs of the United
States; and Rufus H. Wilson, Deputy Administrator of
Veterans Affairs; and Dorothy L. Starbuck, Chief Benefits
Director of the Department of Veterans Benefits of the
Veterans Administration; and A. H. Thornton, Director,
Education and Rehabilitation Service of the Veterans
Administration; and John P. Travers, Director, Veterans
Administration Regional Office; The Veterans Administration,
an agency of the United States, Appellees.
 No. 78-1211.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 8, 1980.
Decided May 15, 1980.
 
 Frank R. M. Young, College Park, Md., Atty. Gen. (Stephen H. Sachs, Atty. Gen. of Maryland, Michael W. Lower, Asst. Atty. Gen. of Maryland, Baltimore, Md., on brief), for appellant.
 Robert E. Broyles, Veterans Administration (Russell T. Baker, Jr., U. S. Atty., Gale E. Rasin, Asst. U. S. Atty., Charles K. Yost, Dist. Counsel, Veterans Administration, Baltimore, Md., on brief), for appellees.
 Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.
 HAYNSWORTH, Chief Judge:
 
 
 1
 The University of Maryland sought review of a decision by the Administrator of Veterans' Affairs regarding the disbursement of VA In-Service Educational Benefit checks. The district court held that 38 U.S.C. § 211(a) precluded review, and dismissed for lack of subject matter jurisdiction. The sole question on this appeal is whether the district court has jurisdiction to entertain such a suit.
 
 I.
 
 2
 The University conducts an overseas college credit program for military personnel stationed in foreign countries. A large portion of tuition costs are subsidized by the government through VA In-Service Educational Benefits paid to the eligible servicemen. In February 1973, the University implemented a plan for financing the tuition obligations of the servicemen which involved the assignment of the participant's benefit checks to the University.
 
 
 3
 The plan worked as follows: at registration the serviceman would execute an agreement obligating him to pay tuition in full; the University would be designated as the serviceman's mailing address for the VA; and the serviceman would execute a power of attorney authorizing the University to negotiate his In-Service Benefit checks and apply their proceeds toward the tuition obligation. This plan was implemented even though 38 U.S.C. § 3101(a) generally prohibited the assignment of such benefits to creditors.
 
 
 4
 In late 1972 and early 1973, the VA issued two policy pronouncements which led the University to believe that such a tuition financing plan would not run afoul of § 3101(a). In Administrator's Decision No. 993 and DVB Circular 20-73-5, the VA indicated that it would not refuse to issue benefit checks merely because an educational institution had been granted a power of attorney to negotiate the checks for purposes of tuition payment.
 
 
 5
 The pronouncements are ambiguous. They do not clearly endorse such arrangements, yet they indicate that the VA had no power to prevent them. The district court found that the ambiguity was conscious and that the intended effect of these statements was to signal the VA's willingness to acquiesce in such plans.
 
 
 6
 In 1976 Congress amended § 3101(a) and added the following language:
 
 
 7
 For the purposes of this subsection, in any case where a payee of an educational assistance allowance has designated the address of an attorney-in-fact as the payee's address for the purpose of receiving his or her benefit check and has also executed a power of attorney giving the attorney-in-fact authority to negotiate such benefit check, such action shall be deemed to be an assignment and is prohibited.
 
 
 8
 The amendment became effective on December 1, 1976.
 
 
 9
 Prior to the effective date, the University discontinued the implementation of the benefit check financing plan. However, the University had already obtained numerous powers of attorney from eligible servicemen enrolled in prior school terms, who had received credit for instruction taken, but with respect to which no VA In-Service Educational Benefit check had been received. In those instances, the serviceman had requested that his checks be sent directly to the University, but the VA had not mailed them.
 
 
 10
 On October 29, 1976, the VA issued DVB Circular 20-76-84 which stated that under the new legislation educational institutions would be prohibited from using a power of attorney to negotiate any benefit checks after December 1, 1976, regardless of when the powers were executed or whether course work had been completed. The University filed this suit in order to force the disbursement of checks not yet mailed and to allow negotiation for all checks which covered pre-December 1, 1976 arrangements.
 
 
 11
 During the pendency of this suit, Congress passed legislation which granted the Administrator the discretion to award equitable relief from amended § 3101(a). Under this legislation the Administrator could allow an educational institution to negotiate checks received under a power of attorney, if that power had been created prior to December 1, 1976 and if the tuition obligation covered only courses which would be completed by June of 1977. The University was granted this equitable relief.
 
 
 12
 The University claims that $900,000 in unpaid tuition remains to be collected. This amount is the sum of benefit checks not received by the University due to the VA's failure or refusal to mail benefit checks receivable under pre-December 1, 1976 powers of attorney. Since these checks were not in the University's possession, they were not covered by the Administrator's grant of equitable relief under Congress' remedial legislation.II.
 
 
 13
 The district court held that 38 U.S.C. § 211(a) precluded review of the administrative action here. In this regard, that section provides:
 
 
 14
 (T)he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.
 
 
 15
 Judicial review of a denial of benefits to an individual is clearly precluded. The question is whether § 211(a) precludes judicial review of a very different kind of controversy such as this.
 
 
 16
 In Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) and Hernandez v. Veterans' Administration, 415 U.S. 391, 94 S.Ct. 1177, 39 L.Ed.2d 412 (1974), the Supreme Court held that § 211(a) would not preclude review of constitutional challenges to certain VA benefit programs. In both Johnson and Hernandez, the conscientious objectors were challenging their statutory exclusion from veterans' education benefits. Here the challenge is to the Administrator's interpretation of his authority under newly amended § 3101(a). In upholding the power to review in the above cases, the Supreme Court explained that § 211(a) had two purposes:
 
 
 17
 (1) to insure that veterans' benefits claims will not burden the courts and the Veterans' Administration with expensive and time-consuming litigation, and
 
 
 18
 (2) to insure that the technical and complex determinations and applications of Veterans' Administration policy connected with the veterans' benefits decisions will be adequately and uniformly made.
 
 
 19
 415 U.S. at 370, 94 S.Ct. at 1167.
 
 
 20
 The University argues that this litigation does not involve veterans' benefits claims, so that under the rationale of Johnson and Hernandez, the purposes of § 211(a) are not served by a refusal to accept jurisdiction. We agree.
 
 
 21
 In Wayne State University v. Cleland, 590 F.2d 627 (6th Cir. 1978), the Administrator had issued regulations defining the term "full-time study." Wayne State challenged these regulations as being inconsistent with a statutory definition of full-time study. The court held that § 211(a) did not preclude review, explaining:
 
 
 22
 The Johnson rationale is particularly appropriate in the present case. Suits challenging the authority to promulgate regulations will not involve the federal courts in the day to day operations of the V.A. Neither will our construction of § 211(a) spawn suits requesting federal courts to second guess the Administrator on the merits of particular claims for benefits or the termination of such benefits. Suits challenging the statutory authority of the Administrator will not involve the courts in the complex and technical niceties of V.A. policy, but rather will seek a determination whether regulations have been promulgated pursuant to a congressional grant of authority. If we construe § 211(a) to bar judicial review of the present case, we would be finding a congressional intent to insulate from judicial review the limits of the Administrator's authority. This construction is not supported by the legislative history of § 211(a).
 
 
 23
 Such a construction would also raise serious doubts about the statute's constitutionality. We refuse to place such a construction on § 211(a) for neither its text nor its scant legislative history provides the "clear and convincing" evidence of congressional intent required by the Supreme Court before a statute will be construed to restrict access to judicial review.
 
 
 24
 590 F.2d at 631-32 (footnotes omitted). The University places some emphasis on this case arguing that like Wayne State, this is not an individual benefits case. The issue here is whether the Administrator is attempting to expand the limits of his power beyond that granted by Congress in the amendment to § 3101(a). The substance of the University's argument is straightforward. Had the Administrator mailed these benefit checks in a timely manner the checks would have been in the University's possession prior to December 1, 1976, and they would have been negotiable by it under the congressional direction. Moreover, the pronouncements of the Administrator (A.D. No. 993 and DVB 20-73-5) indicated that the Administrator would cooperate in the financing plan. The University relied justifiably on those pronouncements. Now, the University alleges the Administrator is acting arbitrarily, beyond the scope of his powers.
 
 
 25
 We agree with the approach adopted in Wayne State and find the rationale applicable here. See also Merged Area X v. Cleland, 604 F.2d 1075, 1078 (8th Cir. 1979) which specifically adopts Wayne State in holding that § 211(a) only applies to review of individual claims.
 
 III.
 
 26
 The case is remanded to the district court for a determination of the merits.
 
 
 27
 REMANDED.