AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, et al., Plaintiffs,

v.

Robert NIMMO, Defendant.

Civ. A. No. 82–0022–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

April 15, 1982.

708

In applying retroactively its regulation requiring reimbursement of costs of nonservice connected medical care furnished to veterans who were ineligible for such care because of ability to pay, Veterans Administration should waive claims against veterans who had health insurance that would have paid cost of medical care if Administration had billed them in limitations period specified by policies and against veterans who chose Administration treatment over nonadministration treatment only because

they reasonably believed that Administration was furnishing treatment without charge. 38 U.S.C.A. §§ 610(a), 622.

John McNally, Murphy, McGettigan, McNally & West, P. C., Alexandria, Va., for plaintiffs.

James R. Rosa, Gen. Counsel, Mary E. Jacksteit, Staff Counsel, Washington, D. C., for American Federation of Government Emp., AFL–CIO.

R. Lawrence Dessem, U. S. Dept. of Justice, Washington, D. C., Joseph A. Fisher, III, Asst. U. S. Atty., Alexandria, Va., for defendant.

MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

The plaintiffs in this action are the American Federation of Government Employees, AFL–CIO, (AFGE) and four veterans whom the United States Veterans Administration (VA) has billed for medical care provided by VA hospitals. The four veterans were all employees of the VA at the time that they received the medical services in question. The VA has billed these plaintiffs under its recently formulated guidelines for recovering the costs of medical care provided to allegedly ineligible veterans. The plaintiffs have filed suit against the Administrator of the VA challenging the guidelines. The plaintiffs contend that this program of retroactive billing is invalid under the Administrative Procedure Act, because it is arbitrary, capricious, and in excess of statutory authority. See 5 U.S.C. § 706(2)(A), (C) (1976). They also argue that the program violates the due process clause of the fifth amendment. The defendant has responded with a motion for summary judgment. See Fed.R.Civ.P. 56(b).

I. FACTUAL BACKGROUND

Congress has authorized the VA to furnish needed medical services to a veteran with a non-service-connected disability if the veteran is unable to afford the cost of treatment. See 38 U.S.C. § 610(a)(1)(B) (1976). Before 1980, a veteran could obtain such care at a VA facility simply by filling out an affidavit stating his inability to pay for the care. See id. § 622(a) (amended 1980). At this time, there was not a specific statute authorizing collection of medical costs in cases where the veteran actually had sufficient assets to pay for treatment. In addition, the VA never issued any regulations defining inability to pay or delineating the circumstances in which it would attempt collection of costs from ineligible veterans. During the 1960's and 1970's, the VA did make sporadic attempts to recover the value of medical services obtained under erroneous affidavits. See, e.g., United States v. Shanks, 384 F.2d 721 (10th Cir. 1967); United States v. Reitzel, Civil No. 1361–T (D.Ariz., Dec. 10, 1962); In re Estate of Vader, 175 Colo. 413, 488 P.2d 59 (1971). The agency, however, apparently did not have a coherent program of collection.

In 1980, Congress amended the statute governing the admission of veterans for treatment of non-service-connected disabilities. See Act of Aug. 26, 1980, Pub.L.No. 96–330, § 401(a), 94 Stat. 1030 (amending 38 U.S.C. § 622 (1976)). The amendment

eliminated the requirement that VA facilities admit any veteran who signs the proper affidavit. *See id.* The VA now may refuse to treat a non-service-connected disability if it appears that the veteran in question has enough resources to pay for treatment elsewhere. *See* H.R.Rep.No.958, 96th Cong., 2d Sess. 16 (1980), U.S.Code Cong. & Admin. News 1980, p. 2463.

At the same time that Congress was restricting hospital admissions, the VA began devising cost-cutting measures of its own. In mid-1980, the VA took notice of an audit conducted in 1979 by its Central Field Office of Audit. The audit revealed that, in fiscal year 1978, several hundred veterans employed by the VA had received care for non-service-connected disabilities based on their asserted inability to pay the cost of such care. The audit further identified 465 members of this group who had an income in excess of $15,000 per year and belonged to a government-sponsored health insurance plan. The audit concluded that these 465 veterans probably did not satisfy the inability-to-pay requirement. The Inspector General of the VA, therefore, recommended that the VA investigate these cases and bill the veterans where appropriate.

In the fall of 1981, the VA decided to bill all 465 of the veterans identified by the 1979 audit. On October 21, 1981, the VA issued Circular 00–81–56. *See* VA Circular 00–81–56 (Oct. 21, 1981). This memorandum explained the recent amendment to the statutory rules governing admission for treatment of non-service-connected disabilities. *See id.* at 1. The circular also stated that the VA would soon begin billing the 465 employees targeted by the audit. *See id.* It indicated that this billing procedure was the first step in a larger program "to recover costs from all ineligible federal employees who have received care from VA medical facilities for nonservice-connected conditions." *Id.* at 2.

On October 26, 1981, the VA sent out Circular 10–81–234. *See* VA Circular 10–81–234 (Oct. 26, 1981). This letter provided the directors of the various VA facilities with instructions on how to bill the employees identified by the audit. *See id.* at 1–3. The circular also established billing limitations:

> Veterans should be billed for all care received between October 1, 1977 and the present time unless one of the following circumstances apply:
>
> A. The individual is 0% service-connected. Then he/she may be billed only to August 26, 1980.
>
> B. The individual is now over 65 years of age. Then bills will be prepared up to his/her 65th birthday.
>
> C. The individual left federal service by resignation. Bill to date of resignation.
>
> D. The individual retired from federal service and his/her annuity is less than $15,000 per annum or he/she did not elect to continue health insurance coverage. Bill only to date of retirement if either condition applies.

*Id.* at 2. Finally, the memorandum stated that "[w]hen billing employees, they should be notified of their right to express disagreement with the billing action; their right to submit evidence to support their position; their right to request waiver or compromise; and their further right to appeal adverse decisions to the Board of Veterans Appeals." *Id.* at 3.

After receipt of this second circular, the directors of the local facilities began the billing process. In late October and early November of 1981, all four of the individual plaintiffs in this case received statements of charges for medical care received since October 1, 1977. The four plaintiffs then appealed their billings by applying for waivers. To date, the VA has not acted on these appeals.

On November 13, 1981, the VA provided further instructions regarding its new billing program. The VA advised its local facility directors by conference call that they should inform all veterans currently applying for VA treatment of the billing program. In addition, the VA indicated that its facilities should not deny medical care to any veteran who affirms his inability to pay the cost of the needed treatment.

VA hospitals have continued to treat all employees targeted by the audit upon receipt of an affidavit affirming inability to pay. The VA has informed these employees that they may receive bills for any services provided in the future. These bills would be in addition to those already sent out.

On January 12, 1982, the plaintiffs filed suit against the VA in this court. Their complaint alleges that they represent the class of 465 employees billed under the 1979 audit. The plaintiffs challenge the VA's program of retroactive billing on two grounds. First, they contend that the VA's billing guidelines violate the Administrative Procedure Act, because they are arbitrary, capricious, and in excess of statutory authority. *See* 5 U.S.C. § 706(2)(A), (C) (1976). Second, the plaintiffs assert that the program is invalid under the due process clause of the fifth amendment. They ask the court to declare that the VA's billing regulations are unlawful. In addition, they request that the court enjoin the VA from recovering the cost of past medical care from the 465 employees who have received statements.

The plaintiffs moved for a preliminary injunction at the time that they filed their complaint. The VA responded with a motion for summary judgment. On February 12, 1982, the court denied the motion for preliminary injunction on the ground that the plaintiffs had failed to show irreparable harm. The court must now decide the summary judgment motion.

## II. THE JURISDICTIONAL ISSUE

█ This case involves a challenge to a federal program based on the Administrative Procedure Act and the fifth amendment. The court, therefore, has general federal question jurisdiction over this action in the absence of a specific jurisdictional prohibition. *See* 28 U.S.C. § 1331 (Supp. IV 1980). Section 211(a) of Title 38 limits the court's power to review VA determinations:

> [T]he decisions of the Administrator on any question of law or fact under any law

administered by the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision . . . .

38 U.S.C. § 211(a) (1976). Thus, the key question is whether this statute deprives the court of jurisdiction.

Section 211(a) clearly precludes review of a denial of benefits to an individual veteran. *See University of Maryland v. Cleland,* 621 F.2d 98, 100 (4th Cir. 1980). The section, however, does not bar constitutional attacks on VA determinations. *See Johnson v. Robison,* 415 U.S. 361, 366, 94 S.Ct. 1160, 1165, 39 L.Ed.2d 389 (1974); *University of Maryland v. Cleland,* 621 F.2d at 100; *Wayne State University v. Cleland,* 590 F.2d 627, 631 (6th Cir. 1978). In addition, it does not prohibit challenges to the VA's authority to promulgate regulations. *See University of Maryland v. Cleland,* 621 F.2d at 100; *Merged Area X v. Cleland,* 604 F.2d 1075, 1078 (8th Cir. 1979); *Wayne State University v. Cleland,* 590 F.2d at 631. *But see Carter v. Cleland,* 643 F.2d 1, 8 (D.C.Cir. 1980). The court, therefore, has jurisdiction to review the plaintiffs' claims in this case, because the subject of these claims is the VA's constitutional and statutory authority to enforce its retroactive billing regulations.

## III. THE ADMINISTRATIVE EXHAUSTION ISSUE

One of the grounds upon which the VA moves for summary judgment is the plaintiffs' failure to exhaust their administrative remedies before filing this suit. All four of the individual plaintiffs have appealed their billings within the VA. At the present time, these appeals are still pending. The court, therefore, must decide whether to dismiss this action until the VA has made a final determination on the plaintiffs' billings.

█ The administrative exhaustion requirement serves several purposes. First, the exhaustion doctrine permits the agency

to apply its expertise and to perform functions within its special competence. *See FTC v. Standard Oil Co. of California*, 449 U.S. 232, 242, 101 S.Ct. 488, 494, 66 L.Ed.2d 416 (1980); *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972); *McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Committee for GI Rights v. Callaway*, 518 F.2d 466, 474 (D.C.Cir.1975). Second, it avoids unnecessary judicial review by giving the agency an opportunity to correct its own mistakes. *See FTC v. Standard Oil Co. of California*, 449 U.S. at 242, 101 S.Ct. at 494; *Parisi v. Davidson*, 405 U.S. at 37, 92 S.Ct. at 817; *McKart v. United States*, 395 U.S. at 195, 89 S.Ct. at 1663; *Wallace v. Lynn*, 507 F.2d 1186, 1190 (D.C.Cir.1974). Third, the doctrine promotes judicial efficiency by reducing the possibility of piecemeal review. *See FTC v. Standard Oil Co. of California*, 449 U.S. at 242, 101 S.Ct. at 494; *McKart v. United States*, 395 U.S. at 195, 89 S.Ct. at 1663. Finally, the exhaustion requirement preserves the autonomy of the administrative system. *See id.* at 194–95, 89 S.Ct. at 1663; *Committee for GI Rights v. Callaway*, 518 F.2d at 474.

■ In determining whether to require exhaustion, the court should weigh these factors against the plaintiffs' interest in the prompt resolution of their claims. *See Mathews v. Eldridge*, 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976); *McKart v. United States*, 395 U.S. at 197, 89 S.Ct. at 1664; *Committee for GI Rights v. Callaway*, 518 F.2d at 474. In particular, "when the reasons supporting the doctrine are found inapplicable, the doctrine should not be blindly applied." *Id.* The plaintiffs in this case are challenging the validity of VA regulations on both constitutional and statutory grounds. The exhaustion doctrine generally does not apply to this type of review if the challenged regulations are final and unambiguous. *See Mathews v. Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900; *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149–56, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Committee for GI Rights v. Callaway*, 518 F.2d at 474. This case, however, does not lend itself to a blanket disposition on the exhaustion question. The court, therefore, will make a separate exhaustion determination on each substantive issue that it confronts.

## IV. THE SUBSTANTIVE ISSUES

The plaintiffs essentially make four attacks on the VA's billing program. First, they contend that the VA does not have the power to recover the cost of treatment rendered before August, 1980, if the veteran receiving the treatment has signed an affidavit stating his inability to pay. Second, the plaintiffs argue that the billing criteria promulgated by the VA are invalid, because they implement the controlling statutory provision in an arbitrary and capricious manner. Third, the plaintiffs assert that the billing program is unlawful, because they relied to their detriment on the VA's prior policy of accepting affidavits as conclusive evidence of inability to pay. Finally, the plaintiffs attack the program on the ground that the VA has only billed veterans who were VA employees at the time of treatment. The plaintiffs base their first three claims on the Administrative Procedure Act and the due process clause. The basis for their last contention is the equal protection right secured by the fifth amendment's due process clause.

### A. The VA's Power to Recover Medical Costs

The VA has billed the 465 veterans identified by the 1979 audit for all medical services rendered since October 1, 1977. The plaintiffs first argue that the agency does not have the power to collect the cost of care provided to these veterans prior to August, 1980. The plaintiffs contend that, before that time, the governing statute prohibited the VA from billing veterans who had signed the appropriate affidavit. If this contention were correct, the billing program would violate both the Administrative Procedure Act and the fifth amendment.

■ The court will not require administrative exhaustion on this issue, because none of the rationales for exhaustion apply

here. The VA has no special expertise or competence for deciding constitutional and statutory questions. In addition, the agency is unlikely to admit that it has no power to enforce a program that it has already begun to implement. Thus, exhaustion would not obviate the need for ultimate judicial review of this issue. Finally, prompt review of the issue is necessary, because of the large amount of resources that the VA is about to expend on its billing projects.

■ Section 610(a) authorizes the VA to "furnish hospital care or nursing home care which the Administrator determines is needed to ... (B) any veteran for a non-service-connected disability if such veteran is unable to defray the expenses of necessary hospital or nursing home care." 38 U.S.C. § 610(a) (1976). Before August, 1980, section 622(a) provided that "the statement under oath of an applicant on such form as may be prescribed by the Administrator shall be accepted as sufficient evidence of inability to defray necessary expenses." *Id.* § 622(a) (amended 1980). This latter provision prohibited the VA from refusing admission to any veteran who had signed the proper affidavit, regardless of that veteran's actual ability to pay. *See* H.R.Rep.No.958, 96th Cong., 2d Sess. 15–16 (1980). On August 26, 1980, Congress effectively repealed this prohibition.[1] *See* Act of Aug. 26, 1980, Pub.L.No. 96–330, § 401(a), 94 Stat. 1030 (amending 38 U.S.C. § 622 (1976)).

The plaintiffs assert that old section 622(a) governed not only the VA's admission policy, but also its ability to recover the cost of treatment. Under this interpreta-

tion of the statute, the VA cannot collect the cost of care rendered before August, 1980, to veterans who had signed affidavits. The court, however, disagrees with this analysis. It holds that old section 622(a) does not bar the VA from recovering the cost of care provided while that section was in effect. *See United States v. Shanks*, 384 F.2d 721, 723 (10th Cir. 1967); *United States v. Reitzel*, Civil No. 1361–T (D.Ariz., Dec. 10, 1962); *In re Estate of Vader*, 175 Colo. 413, 488 P.2d 59, 61 (1971). *But see United States v. St. Paul Mercury Indemnity Co.*, 238 F.2d 594, 596–97 (8th Cir. 1956) (dictum). *See also United States v. Bender Welding & Machine Co.*, 558 F.2d 761, 762–64 (5th Cir. 1977). In the absence of a statutory prohibition, the VA has a common-law right to recover benefits unlawfully provided to veterans. *See United States v. Shanks*, 384 F.2d at 723. Thus, the VA has the power to collect the cost of pre-1980 treatment from veterans who did not qualify for such treatment under section 610(a).[2]

The VA's common-law right to recover benefits receives support from both a statutory provision and the VA's own regulations. Section 952(a) of Title 31 directs that the "head of an agency or his designee ... shall attempt collection of all claims of the United States for money or property arising out of the activities of, or referred to, his agency." 31 U.S.C. § 952(a) (1976). This statute indicates congressional recognition of each agency's common-law right to recover benefits procured by ineligible recipients. In addition, section 17.62 of the VA's regulations appears to authorize collection of the costs of medical care unlawfully provided to veterans:

---

1. The new section 622 provides:

> [T]he fact that an individual is—
> (1) eligible to receive medical assistance under a State plan approved under title XIX of the Social Security Act (42 U.S.C. 1396 et seq.);
> (2) a veteran with a service-connected disability; or
> (3) in receipt of pension under any law administered by the Veterans' Administration;
> shall be accepted as sufficient evidence of such individual's inability to defray necessary expenses.

38 U.S.C. § 622 (Supp. IV 1980). One purpose of this change in the law was to allow the VA to look beyond a veteran's affidavit when admitting him for treatment of a non-service-connected disability. *See* H.R.Rep.No.958, 96th Cong., 2d Sess. 16 (1980). Thus, the VA may now refuse admission to any veteran who is able to pay for treatment elsewhere, regardless of whether that veteran has signed an affidavit.

2. There is no dispute that the VA has the power to recover the cost of treatment rendered after the enactment of the new section 622.

Charges at the indicated rates shall be made for Veterans Administration hospital care or medical services . . . as follows:

(a) *Furnished in error or on tentative eligibility.* Charges at rates prescribed by the Chief Medical Director shall be made for inpatient or outpatient care or services . . . authorized for any person on the basis of eligibility as a veteran . . . but he was subsequently found to have been ineligible for such care or services as a veteran because the military service or any other eligibility requirement was not met . . . .

38 C.F.R. § 17.62 (1980). The court, therefore, rules that the VA has the power to institute a program for recovering the expense of pre-1980 treatment from ineligible veterans.

### B. The VA's Billing Criteria

The plaintiffs' second contention is that the VA's billing criteria are invalid, because they implement section 610(a) in an arbitrary and capricious manner. In particular, the plaintiffs allege that the VA's guidelines provide an irrational definition of whether a veteran is able to defray the cost of medical care. If the court accepts this assertion, it will have to declare the guidelines invalid under section 706(2)(A) of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A) (1976).

■■■ The exhaustion doctrine normally does not apply when a litigant is attacking the validity of an agency's regulations. *See Mathews v. Eldridge,* 424 U.S. 319, 330, 96 S.Ct. 893, 900, 47 L.Ed.2d 18 (1976); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149–56, 87 S.Ct. 1507, 1515–1519, 18 L.Ed.2d 681 (1967); *Committee for GI Rights v. Callaway,* 518 F.2d 466, 474 (D.C.Cir.1975). The plaintiffs here challenge the VA's billing regulations. The court, therefore, will require exhaustion only to the extent that the billing regulations either are not final or need further interpretation by the VA.

■■■ The VA has billed 465 veterans who received treatment for non-service-connected disabilities during the VA's fiscal year 1978. All of the veterans billed under this program were VA employees at the time that they received the medical services in question. *See* Affidavit of W. E. Busbee ¶ 6. The VA has used three criteria in determining that these 465 veterans did not meet the inability-to-pay standard of section 610(a)(1)(B). First, each veteran billed by the VA must have had an annual salary in excess of $15,000 during the year in question. *See id.* Second, each veteran must have had government-sponsored health insurance during the year in question. *See id.* Third, each veteran's projected total outlay for VA treatment received during the year in question must be less than 6% of his annual salary for that year. *See id.* The VA computes a veteran's projected total outlay as the sum of his annual cost of health insurance and the projected out-of-pocket expense for amounts not covered by insurance. *See id.* The agency has billed the 465 veterans meeting these criteria for all services rendered since the beginning of fiscal year 1978. *See* VA Circular 10–81–234 at 2 (Oct. 26, 1981).

The three eligibility criteria provide an initial determination of whether a particular veteran was able to defray the cost of medical treatment. Circular 10–81–234 places four limitations on recovering costs from veterans meeting the criteria for ineligibility. *See id.* First, the VA may bill an individual who is 0% service-connected only for treatment received prior to August 26, 1980. Second, the agency may assess veterans only for services rendered before their sixty-fifth birthday. Third, the VA may bill veterans who have resigned from VA employment only for care provided before the date of their resignation. Fourth, if a veteran has retired from VA employment, the agency may bill him only for treatment rendered before the date of retirement. This last limitation does not apply if the retired veteran has an annuity of at least $15,000 per year and has elected to continue health insurance coverage. *See id.* The VA has used the three eligibility criteria and these four limitations to make a thresh-

old determination of the amount of medical costs for which each veteran is liable.

If a billed veteran wishes to challenge the VA's threshold determination, he has two avenues of administrative appeal. First, he may file a request for termination of collection activity with the local VA facility that has billed him. *See* 38 C.F.R. § 17.65 (1980). The local facility must terminate the VA's claim against the veteran if the claim is without legal merit. *See id.* § 1.942(e), (f); VA Manual MP–4, § 5D.04(2)(e). The sole purpose of the termination procedure is to verify that the initial application of the eligibility criteria and billing limitations was correct. There is no indication that termination review imposes any new criteria that would refine the threshold billing determination. If the local facility refuses to terminate collection, the veteran may appeal the decision to the Board of Veterans' Appeals. *See* 38 U.S.C. § 4004(a) (1976); 38 C.F.R. §§ 19.1, .3 (1980).

The veteran's second avenue of appeal is to submit a request for waiver of the VA's claim to the local facility that has billed him. *See id.* §§ 1.956–.957, 17.65a(a). The local facility will grant a waiver if recovery of the claim "would be against equity and good conscience." 38 U.S.C. § 3102(a) (1976). *Accord* 38 C.F.R. § 1.963(a) (1980). In applying this standard, the facility must consider six factors:

(1) Fault of debtor. Where actions of the debtor contribute to creation of the debt.

(2) Balancing of faults. Weighing fault of debtor against Veterans Administration fault.

(3) Undue hardship. Whether collection would deprive debtor or family of basic necessities.

(4) Defeat the purpose. Whether withholding of benefits or recovery would nullify the objective for which benefits were intended.

(5) Unjust enrichment. Failure to make restitution would result in unfair gain to the debtor.

(6) Changing position to one's detriment. Reliance on Veterans Administration benefits results in relinquishment of a valuable right or incurrence of a legal obligation.

*Id.* § 1.965(a). The facility, however, must deny a waiver if any of the following elements are present in the case:

(1) Fraud or misrepresentation of a material fact (see § 1.962(b)).

(2) Material fault. The inexcusable commission or omission of an act that directly results in the creation of a debt to the Government.

(3) Lack of good faith. Absence of an honest intention to abstain from taking unfair advantage of the holder and/or the Government.

*Id.* § 1.965(b). If the local facility denies a waiver, the veteran again has a right to appeal the ruling to the Board of Veterans' Appeals. *See* 38 U.S.C. § 4004(a) (1976); 38 C.F.R. §§ 19.1, .3 (1980).

The VA Manual MP–4 further refines the factors involved in granting a waiver. The manual requires the presence of only two elements to create a prima facie case for waiver. First, VA fault must outweigh the veteran's fault. *See* VA Manual MP–4, § 8B.02a. Second, the veteran must establish detriment:

[T]here must be an additional finding either that debtor would suffer unreasonable detriment should collection be effected or that debtor has already suffered detriment as a result of the overpayment and justifiable reliance(s) in connection therewith. In *most cases* the question as to detriment will be directed at the effect on debtor of collection, i.e., if collection would cause debtor undue financial hardship, then collection could be waived since such would be against equity and good conscience. However, in *unusual circumstances*, the question as to detriment may be directed solely at the effect on debtor from his or her having received and relied on the overpayment, as being proper, i.e., if debtor has changed his or her position for the worse by reason of the overpayment, then collection could be waived

since such might be against equity and good conscience without regard to the question of undue financial hardship should collection be effected. *Id.* § 8B.02b. The manual also explains the three factors listed in the published regulations as barring waiver. *See id.* § 8B.03.

The court holds that the combination of the preliminary billing criteria and the requirements for waiver produces a rational definition of the inability-to-defray standard. The VA derived its three eligibility criteria from statistical studies made by the United States Department of Labor and the Internal Revenue Service.[3] *See* Affidavit of W. E. Busbee ¶ 6(d). These studies indicated that an annual salary of $15,000 was greater than the average amount earned by an American family. *See id.* The studies went on to suggest that a family with an annual gross income in excess of $15,000 could afford to spend between 4.5% and 7% of that income on health care. *See id.* The VA, therefore, chose 6% of an income exceeding $15,000 as the threshold standard for inability to pay under section 610(a)(1)(B).

The three billing criteria generate an adequate initial estimate of a veteran's ability to pay for VA treatment. These criteria, however, do not take into account such factors as the number of the veteran's dependents, his health care costs incurred outside the VA, and any extraordinary expenses that he might have during a particular year. Without the possibility of further refinement, the VA's threshold billing determination might qualify as arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A) (1976). The waiver procedure provides the needed opportunity for honing this determination. In particular, the agency can grant a waiver if collection would result in "undue financial hardship." VA Manual MP–4, § 8B.02b(1)(a). This standard permits the VA to consider the relevant financial factors left out of its initial determination.[4] Thus, the billing and waiver procedures viewed as a whole appear to produce a rational definition of inability to pay under section 610(a)(1)(B).[5] The VA may possibly interpret the waiver guidelines so as to introduce a degree of arbitrariness into its waiver decision. Review of any such interpretation, however, must await administrative exhaustion.[6]

### C. The Detrimental Reliance Issue

The plaintiffs next contend that the VA's billing program is unlawful, because many of the billed veterans relied to their detriment on the VA's prior policy of accepting affidavits as conclusive evidence of inability to pay. They specifically allege that retroactive application of the billing criteria has resulted in two types of prejudice.[7] First,

---

**3.** The VA specifically relied on three government reports in formulating its billing criteria: (1) U. S. Bureau of Labor Statistics, Dep't of Labor, Bull. No. 1992, Consumer Expenditure Survey: Integrated Diary and Interview Survey Data, 1972–73, at 31, 39 (1978); (2) U. S. Bureau of Labor Statistics, Dep't of Labor, Autumn 1977 Urban Family Budgets and Comparative Indexes for Selected Urban Areas 2–3 (undated); and (3) Internal Revenue Service, Bull. No. 198, Preliminary Statistics of Income for 1976: Individual Income Tax Returns (1978).

**4.** The VA manual explicitly mandates consideration of "the present and anticipated income of the debtor, age, type of employment, education or vocational background, general financial worth, and necessary family expenses." VA Manual MP–4, § 8B.02b(1)(a)(1). This list appears to cover all of the factors that might be relevant to an inability-to-pay determination.

**5.** One of the plaintiffs' assertions is that the VA's initial billing criteria are invalid, because they create an irrebuttable presumption of ineligibility. This contention is incorrect, regardless of whether irrebuttable presumptions are valid. The waiver process obviously imposes new substantive criteria on the VA's decision-making process. Thus, the preliminary billing criteria simply do not create a presumption that is irrebuttable.

**6.** Section 211(a) may well preclude later review of the VA's interpretation of its own regulations. *See* 38 U.S.C. § 211(a) (1976). The court, unfortunately, has no control over the limitations that Congress has placed on its power to review VA determinations.

**7.** The plaintiffs also assert that the VA's failure to notify veterans of their right to appeal billings has caused prejudice. The four individual plaintiffs in this case, however, have all appeal-

the plaintiffs assert that some of the veterans had health insurance that would have covered the cost of VA treatment if the VA had billed them within the limitations period set by their insurance policies. Second, the plaintiffs claim that other of the veterans had health insurance that would have covered the cost of treatment in a non-VA facility. These veterans chose VA medical services only because they believed that the services would be furnished without charge. The plaintiffs, therefore, conclude that retroactive application of the new billing guidelines would violate both the Administrative Procedure Act and the due process clause.

The plaintiffs once again are attacking the validity of the VA's billing regulations. The exhaustion doctrine, therefore, applies only to the extent that the regulations either are not final or require further interpretation by the VA.

■ A retroactive federal regulation is not a per se violation of either the fifth amendment or the Administrative Procedure Act. Retrospective application of a regulation is valid, unless it would result in "manifest injustice." *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969); *Coe v. Secretary of HEW*, 502 F.2d 1337, 1340 (4th Cir. 1974). In particular, the courts have held that retroactivity contravenes the fifth amendment only if the regulated party has reasonably relied on prior policy to his detriment. *See Fairfax Nursing Center, Inc. v. Califano*, 590 F.2d 1297, 1302 (4th Cir. 1979); *Adams Nursing Home of Williamstown, Inc. v. Mathews*, 548 F.2d 1077, 1081 (1st Cir. 1977). The Administrative Procedure Act seems to impose the same standard on retroactive regulations. *See Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 981 (5th Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *Maceren v. District Director, INS*, 509 F.2d 934, 940 (9th Cir. 1974).

■ The three preliminary billing criteria do not make any allowances for detrimental reliance. These criteria provide an adequate estimate of whether a particular veteran met the inability-to-pay test at the time that he received VA care. They, however, do not take into account events that have occurred since the time of treatment. If the billing criteria were the only factors that entered into the VA's decisionmaking process, the billing program might well violate both the due process clause and the Administrative Procedure Act.

A veteran who feels that payment of his VA bill will result in unfair prejudice may apply for a waiver. The waiver procedure permits the VA to consider two types of prejudice. First, the agency may take into account "undue financial hardship." VA Manual MP–4, § 8B.02b(1)(a). The VA manual states that "[a] finding of undue financial hardship is justified if collection of the indebtedness will seriously impair the debtor's ability to discharge his or her responsibilities to provide the family with food, clothing, shelter, medical attention, transportation, and such other necessities as are required." *Id.* § 8B.02b(1)(a)(1). This provision, in effect, permits the VA to make allowances for any deterioration in a veteran's financial condition occurring after he receives the treatment in question.

The second type of prejudice that the VA may consider during a waiver proceeding is detrimental reliance. *See* VA Manual MP–4, § 8B.02b(2). The agency may waive a bill "where the payee, by reason of his or her justifiable reliance on the overpayment as being proper, has either relinquished a valuable right which he or she would have retained or has changed his or her position for the worse." *Id.* § 8B.02b(2)(a). The VA must make this determination without regard to the financial hardship issue. *See id.* Thus, the waiver procedure does take into account any detriment that the plaintiffs may have suffered in relying on the VA's prior policy of accepting affidavits as conclusive evidence of inability to pay.

ed their VA bills by requesting waivers. They, therefore, have no standing to assert a prejudice claim based on the VA's alleged failure to publicize the appeal right.

The court holds that the VA may apply its billing program retroactively, because the appeals process does allow consideration of unfair prejudice. At this time, the court cannot determine precisely how the VA will construe the detrimental reliance guidelines contained in its manual. The plaintiffs, therefore, should refrain from raising interpretation issues until they have exhausted their administrative remedies. The court, however, will provide some initial guidance on this question. The plaintiffs allege that the veterans billed by the VA have suffered two types of detriment. They claim that some of the veterans had health insurance that would have paid the cost of VA care if the VA had billed them within the limitations period specified by their insurance policies. The agency should waive its claims against these veterans to the extent that they have lost the opportunity to recover from their insurers. The plaintiffs also assert that other veterans had health insurance that would have covered treatment in a non-VA facility. These veterans allegedly chose VA treatment only because they reasonably believed that the agency was furnishing the treatment without charge. The VA should waive its claims against veterans who fall in this category to the extent that their insurance would have paid for non-VA care.

### D. The Equal Protection Issue

The plaintiffs' final contention is that the VA's billing program violates the equal protection right created by the fifth amendment's due process clause. The plaintiffs base this assertion on the fact that the VA does not yet have any concrete plans to bill veterans who were not federal employees at the time of treatment. The court, however, disagrees with this argument.

The VA's billing program does not affect either a suspect class or a fundamental right. As a consequence, the rational-basis standard of review applies, rather than the strict-scrutiny test. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 1228 n.2, 43 L.Ed.2d 514 (1975); *San Antonio Independent School District v.*

*Rodriguez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973); *McGinnis v. Royster*, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973). The court first holds that the federal government has a right to place a higher standard on its own employees. *See Wise v. United States*, 603 F.2d 182, 191 (Ct.Cl.1979). Thus, a classification based on federal employment passes the rational-basis test. The court also notes that billing VA employees may be merely the first step in a larger program to recover medical costs from all ineligible veterans. *See* VA News Release at 2 (Oct. 26, 1981). This type of governmental purpose clearly meets the rational-basis standard. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). The court, therefore, holds that the VA's billing program does not violate the equal protection right secured by the fifth amendment.