711 F.2d 28
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, Frank
L. Matthews, Richard L. Bell, John A. Rooker and
Roy D. Howard, Appellants,
v.
Robert NIMMO, Administrator, United States Veterans
Administration, Appellee.
 No. 82-1520.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 10, 1983.
Decided July 6, 1983.
 
 Mary E. Jacksteit, Asst. Gen. Counsel, Washington, D.C. (James R. Rosa, Gen. Counsel, Washington, D.C., on brief), for appellants.
 R. Lawrence Dessem, Dept. of Justice, Civ. Div., Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Alexandria, Va., William Kanter, Dept. of Justice, Civ. Div., Washington, D.C., on brief), for appellee.
 Before WIDENER and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The American Federation of Government Employees, AFL-CIO and four veterans appeal from a judgment of the district court in favor of the Veterans Administration (VA). The Federation and the veterans brought suit challenging the VA's recently formulated guidelines for recovering the costs of medical care provided to allegedly ineligible veterans. They argue the VA's guidelines were promulgated in violation of the Administrative Procedure Act and violate the due process clause of the fifth amendment.
 
 
 2
 On a motion for summary judgment by the VA, the district court held that the veterans must exhaust their administrative remedies to the extent that the challenged regulations either are not final or require further interpretation by the VA. To the extent that the regulations are final and unambiguous, however, the court held they are not arbitrary, capricious, in excess of statutory authority, or in violation of the fifth amendment. See American Fed'n of Gov't Employees, AFL-CIO v. Nimmo, 536 F.Supp. 707 (E.D.Va.1982).
 
 
 3
 We affirm the judgment of the district court, but solely on the ground that the veterans must exhaust their administrative remedies. We vacate the remainder of the district court's decision insofar as it decides the merits of the veterans' claims.
 
 
 4
 * The VA is authorized to provide medical care to a veteran for non-service connected disabilities if the veteran is unable to afford the cost of the care. 38 U.S.C. § 610(a)(1)(B). Prior to 1980, § 622(a) of Title 38 provided that a veteran could obtain free care simply by filing an affidavit stating his or her inability to pay. In 1980, however, Congress changed the statute and eliminated the requirement that the VA admit any veteran who files an appropriate affidavit. The VA may now refuse to treat a veteran for a nonservice connected disability if it appears the veteran has sufficient resources to pay for medical care elsewhere. Pub.L. No. 96-330, § 401(a); 94 Stat. 1051 (amending 38 U.S.C. § 622) (1980). See H.R.Rep. No. 958, 96th Cong., 2d Sess. 16 (1980).
 
 
 5
 At the same time that Congress was amending the statute, the VA was devising a cost recovery program. This program was first announced in VA Circular 00-81-56 (Oct. 21, 1981), which explained the recent statutory amendment. It also announced that 465 veterans, employed by the VA and treated for nonservice connected disabilities in fiscal year 1978, had been targeted by an audit as probably not meeting the inability to pay requirement.[1] The circular indicated the VA soon would begin billing the targeted employees and that this was the first step to recover costs from all ineligible federal employees who had received free medical care for non-service related conditions.
 
 
 6
 Several days later, VA Circular 10-81-234 (Oct. 29, 1981) was issued. This circular provided directors of the various VA facilities with instructions on how to bill the employees identified in the audit.[2] It also stated that billed employees should be informed of the administrative remedies available to them.
 
 
 7
 Two administrative remedies exist. The first is an appeal to the Board of Veterans Appeals, which is initiated by a veteran filing a notice of disagreement. See 38 U.S.C. §§ 4001-4009. In the context of this case, the issue in such an appeal would be the factual one of whether the veteran was unable to pay for medical care at the time the VA medical treatment was received.
 
 
 8
 The second administrative remedy is a request for waiver. The VA is prohibited from collecting a debt owed if collection would be against equity and good conscience.[3] 38 U.S.C. § 3102. The waiver request is initially decided by a committee on waivers and compromises. 38 C.F.R. §§ 1.955-1.970 (1982). The committee's action is appealable to the Board of Veterans Appeals. 38 C.F.R. § 1.958 (1982). All decisions of the Board of Veterans Appeals are final and not reviewable by any court. See 38 U.S.C. § 211(a).
 
 II
 
 9
 We believe the veterans must exhaust their available administrative remedies before we can decide the merits of their claims. They will not be injured if judicial relief is withheld at this time. The VA has not denied medical care to any veteran as a result of the cost recovery program. Those veterans identified in the audit have simply been informed that they may in the future be billed for medical services. The VA also has stated that it will not seek to collect from any billed veteran until he has exhausted all of his administrative appeals.
 
 
 10
 Furthermore, the veterans can obtain redress through the available administrative procedures. Pursuit of the appeal procedure or the waiver procedure can result in the cancellation, in whole or in part, of the bills the 465 veterans have received. Indeed, the VA has already suspended the bills of at least seven veterans under the appeal procedure and has waived the bills of at least forty other veterans under the waiver procedure.[4]
 
 
 11
 Under these circumstances, we believe it is appropriate to apply the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-464, 82 L.Ed. 638 (1938). Requiring exhaustion is particularly appropriate when the administrative remedy may eliminate the necessity to decide constitutional questions. See Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 772-73, 67 S.Ct. 1493, 1503-1504, 91 L.Ed. 1796 (1947); Montana Chapter of Ass'n of Civilian Technicians, Inc. v. Young, 514 F.2d 1165, 1167-68 (9th Cir.1975).
 
 
 12
 Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), does not preclude application of the exhaustion doctrine to the extent that the challenged regulations are final and unambiguous. Although the Supreme Court did not require exhaustion in Mathews, this ruling was premised on facts not present here. The Court found that the party challenging the regulations in Mathews had received a final administrative decision even though he had not exhausted the full administrative procedures available and held that he was subject to irreparable injury if judicial review was deferred. See Mathews, 424 U.S. at 326-32, 96 S.Ct. at 898-901.
 
 III
 
 13
 Because we believe the veterans must exhaust their administrative remedies, we vacate that portion of the district court's judgment which reached the merits of their claims. Although decisions of the Board of Veterans Appeals are not subject to judicial review, courts are not precluded from considering the VA's statutory authority for promulgating regulations and the constitutionality of its actions. Johnson v. Robison, 415 U.S. 361, 366-67, 94 S.Ct. 1160, 1165-1166, 39 L.Ed.2d 389 (1974); University of Maryland v. Cleland, 621 F.2d 98, 100 (4th Cir.1980). Accordingly, the appellants will be able to renew their challenge to the VA's cost recovery program after the veterans have exhausted their administrative remedies, should anything remain of their claims at that time.
 
 
 14
 AFFIRMED IN PART; VACATED IN PART.
 
 
 
 [1]
 The circular stated that the 465 veterans had been identified by applying an income model suggesting that a person earning $15,000 a year or more can, with medical insurance, afford to pay medical costs of up to 6% of gross income. The model assumed the identified veterans would receive payment of their medical costs up to the relevant limit by their health insurers
 
 
 [2]
 The circular stated that the veterans should be billed for medical care received between October 1, 1977, and the date of the circular, with four exceptions:
 A. The individual is 0% service-connected. Then he/she may be billed only to August 26, 1980.
 B. The individual is now over 65 years of age. Then bills will be prepared up to his/her 65th birthday.
 C. The individual left federal service by resignation. Bill to date of resignation.
 D. The individual retired from federal service and his/her annuity is less than $15,000 per annum or he/she did not elect to continue health insurance coverage. Bill only to date of retirement if either condition applies.
 VA Circular 10-81-234, at 2 (Oct. 29, 1981).
 
 
 [3]
 In applying this standard, the VA has stated that it will consider several factors, including: (1) balancing of faults; (2) undue hardship; and (3) changing position of one's detriment. See 38 C.F.R. § 1.965(a) (1982). See also VA Manual MP-4, part I, chapter 8
 
 
 [4]
 In fact, all four individual plaintiffs have been pursuing their administrative remedies during the pendency of this litigation. Thus far, one plaintiff has had his bill cancelled in full, another has had his bill cancelled in part, and a third has had his waiver request remanded by the Board of Veterans Appeals for further consideration